534 F.2d 337
 175 U.S.App.D.C. 135
 DISTRICT OF COLUMBIA REDEVELOPMENT LAND AGENCY, a Body Corporate
v.
THIRTEEN PARCELS OF LAND IN SQUARES 859, 912, 934 AND 4068
IN the DISTRICT OF COLUMBIA et al.
Appeal of Raymond F. LEWIS and Violet Lewis.
 No. 74-1644.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 8, 1975.
Decided Feb. 23, 1976.
 
 Leonard C. Collins, Washington, D.C., for appellants.
 Glen R. Goodsell, Atty., Dept. of Justice, Washington, D.C., with whom Wallace H. Johnson, Asst. Atty. Gen., and Jacques B. Gelin, Atty., Dept. of Justice, Washington, D.C., were on the brief for appellees.
 Before TAMM, ROBINSON and MacKINNON, Circuit Judges.
 Opinion for the Court filed by Circuit Judge TAMM.
 Dissenting opinion filed by Circuit Judge MacKINNON.
 TAMM, Circuit Judge:
 
 
 1
 The District of Columbia Redevelopment Land Agency ("DCRLA") filed a declaration of taking, condemning appellant's three lots located at 1424 Florida Avenue, N.E.[1] After a trial, compensation was fixed at $64,600. This figure was the highest estimate given by DCRLA's expert witness, who testified that the land was worth $60,200 or $64,600, depending upon which of two methods of valuation was used. The trial court refused to permit the landowner to testify as to his opinion of the reasonable value of the property insofar as it was based in part on his purchase for $120,000 of another piece of property located on Bladensburg Road, which the court found to be not comparable.[2] The landowner appeals, contending that this personal testimony as to value, so based, should have been admitted. We conclude that the landowner should have been permitted to testify as to the value of his property even though his opinion was based in part on his experience with the Bladensburg Road property. We believe that differences between the two pieces of property properly go to the weight of the owner's testimony, not to its admissibility. Accordingly, we reverse and remand for a new trial.
 
 
 2
 As a general principle, "just compensation" for property taken by the government is compensation "sufficient to make good the loss to the owner . . . . (The owner is) entitled to the full money equivalent of the property taken, and thereby to be put in 'as good a position pecuniarily as it would have occupied, if the property had not been taken.' " 1 L. Orgel, Valuation Under the Law of Eminent Domain § 46 at 222 (2d ed.1953), quoting United States v. New River Collieries Co., 262 U.S. 341, 343, 43 S.Ct. 565, 566, 67 L.Ed. 1014, 1016 (1923). Unfortunately, value is a subjective concept, and there is often a substantial gap between value to the owner and value to others the government, a hypothetical buyer, or the public at large. Courts thus have adopted market value as a rough equivalent of value to the owner, but have disregarded certain personal aspects of the loss to the owner, including "sentimental losses," and "incidental damages." In short,
 
 
 3
 the "value" of the property is visualized as something distinct from the injuries which its taking will impose on the owner, although it is closely associated with its injuries. The conceptual mythical distinction between a (positive) value on the one hand, and a (negative) summation of damages on the other hand, pervades nearly all judicial opinions.
 
 
 4
 Id. at 223.
 
 
 5
 At least in part because of the difficulty of arriving at one "value" equivalent to "just compensation" for property taken, condemnation proceedings have been characterized by liberal applications of the rules of evidence.[3] Often witnesses are allowed to testify as quasi "experts" despite their lack of specialized knowledge or training respecting the market value of land. See generally, 1 Orgel, supra, § 132 at footnotes 43-45 and cases cited therein.
 
 
 6
 As a general rule, the opinion of a landowner as to the value of his land is admissible without further qualification because of his close relationship with the land.[4] Others may be qualified as experts, but an owner is usually not required to so qualify. In hornbook terms,
 
 
 7
 (a)n owner of property is always entitled to testify as to its value, and to express an opinion as to its value in condemnation proceedings. An owner does not have to qualify as an expert, nor be engaged in buying and selling real estate.
 
 
 8
 1 Orgel, supra, § 132 at 567-68 n.46, quoting Provo River Water Users' Ass'n v. Carlson, 103 Utah 93, 133 P.2d 777, 781 (1943). See also Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); Bateman v. Donovan, 131 F.2d 759 (9th Cir. 1942). See generally 3 Wigmore on Evidence §§ 714, 716 (Chadbourn rev.1970); 32 C.J.S. Evidence § 546 (120) at 470-72.
 
 
 9
 Transcending this level of generality quickly leads to divided opinions and conflicting authorities, however. One line of authority, most notably represented by Wigmore, supra, apparently takes the position that an owner is per se qualified, and that any lack of knowledge goes only to the weight of his testimony.[5] Other authorities adopt the slightly different rule that ownership establishes a presumption of knowledge which, if rebutted, renders the testimony inadmissible.[6] Cofflin v. State, 230 Md. 139, 143, 186 A.2d 216, 219 (1962). This distinction may become important where a court must confront the question whether an owner is permitted to testify as to the value of his land qua owner, or is merely granted a presumption which, if not rebutted, entitles him to take the stand to testify as an "expert" on his own behalf. In the former case, the testimony of the owner logically would require no basis for its admissibility other than the mere fact of ownership, and the facts upon which the owner bases his opinion should be left to the jury in weighing the evidence; in the latter, admissibility would depend upon whether the opinion rested upon some independent competent and relevant basis, such as experience in buying or selling land, general knowledge of land values in the area or sales of comparable land, or some particular knowledge relating to the land in question.[7]
 
 
 10
 In the case of an expert witness who bases his testimony on improper and incompetent grounds, the rule is clear that the testimony should not be admitted. See, e. g., Commonwealth, Dep't of Highways v. Darch, 374 S.W.2d 490 (Ky.1964); San Diego Land & Town Co. v. Neale,88 Cal. 50, 25 P. 977 (1891). This is so because the probative value of such expert testimony, stripped of its claim of expertise, is very low, while the likelihood that it will confuse the trier of fact is very high. In these matters, the trial judge has considerable discretion. See, e. g., District of Columbia Redevelopment Land Agency v. 61 Parcels of Land, 98 U.S.App.D.C. 367, 235 F.2d 864 (1956). Other courts have gone farther, and have applied the expert basis rule to owners' testimony. See, e. g., Commonwealth, Dep't of Highways v. Fister, Ky., 373 S.W.2d 720, rehearing denied, 376 S.W.2d 543 (Ky.1963). In these instances, however, we believe the discretion of the trial judge must be tempered by another factor the policy in favor of permitting owners to testify as to the value of condemned property.
 
 
 11
 It is axiomatic that a landowner has more leeway in fixing values than does an expert. We said in Arkansas State Highway Comm. v. Fowler, 240 Ark. 595, 401 S.W.2d 1 (1966): "It is not necessary to show that he was acquainted with the market value of such property or that he is an expert on values. He is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns. The weight of his testimony is, of course, affected by his knowledge of the value."
 
 
 12
 Arkansas State Highway Comm'n v. Mullens, 255 Ark. 796, 797, 502 S.W.2d 626, 627 (1973). See also Arkansas State Highway Comm'n v. Russell, 240 Ark. 21, 398 S.W.2d 201 (1966) (disclosure of questionable basis for owner's testimony affects the weight of the testimony). The owner does not testify as just another expert, but from his unique position as the individual who stands to gain or lose the most from the tribunal's determination of the value of his property. The owner is draped with no cloak of expertise; the jury is aware of the owner's interests and free to evaluate his testimony, even to discard it altogether, in weighing the evidence. Although courts have excluded owners' testimony based on such factors as personal or sentimental value[8] or speculation as to business profits,[9] the right of the owner to testify is based, at least in part, on the recognition of the subjective nature of value. Opinions as to value differ, and the owner has a right to place all evidence pertaining to the value of his condemned property before the trier of fact.[10] Turning now to examine the particular testimony sought to be introduced in this case, we find that under either standard the owner's testimony should have been admitted in this case.
 
 
 13
 As the dissent correctly states, the issue here is not merely a matter of testimonial qualification. Appellant did in fact take the stand and testify. The issue is thus more correctly viewed as one of admissibility. In determining whether appellant's testimony should have been admitted, we must look both to the traditional rules of evidence, liberally applied, and to the special nature of eminent domain proceedings, especially the unique position of the owner of the condemned property. See generally, 1 Orgel, supra, § 133; 5 Nichols on Eminent Domain, § 18.4(2) (rev. 3d ed. 1975).
 
 
 14
 Appellant attempted to compare his business operations on the two sites in order to demonstrate that the Florida Avenue location was a better site. At oral argument, appellant's counsel explained that, because of the greater flow of traffic at the Florida Avenue location, that property should be assigned a greater value than the Bladensburg Road location:
 
 
 15
 (T)here was more road traffic. He had been able to build up at (the Florida Avenue) location in three years what it took him over 20 years to build up at the other location. And therefore this was a better site.
 
 
 16
 (Transcribed from oral argument).
 
 
 17
 Appellant thus sought to introduce evidence not of the comparability of two pieces of land, but to demonstrate the comparability of two similar business operations and thus to testify from his experience in operating substantially similar business that the Florida Avenue location was better suited to this particular use.[11] The "locational" factors upon which appellant sought to rely do not resemble those of the neighborhood grocery store owner, who claims that his property should command a premium due to the close relationship he has established with his customers over the years, but relate directly to factors determinative of market value in general, the suitability of the property for a particular use. The factors related not only to what the property was worth to appellant, but to what a hypothetical buyer would be willing to pay for it.
 
 
 18
 This was a business piece of property, it was a commercial piece of property, and the amount of business a man can do in the place is obviously going to be an influencing factor on what he will pay for it.
 
 
 19
 (Transcribed from oral argument).
 
 
 20
 There is no indication that appellant sought to introduce other improper considerations, such as customer goodwill or speculative future profits. The testimony was based only in part on a comparison with an incomparable piece of property.[12] The comparison was more directly one of similar business operations inasmuch as their relative success reflected the suitability of the condemned property for a particular use. Were this the testimony of an ordinary witness, we might well conclude that the trial judge, in the exercise of his discretion, was justified in excluding it insofar as it was based in part on an inadmissible element. We believe, however, that owners are entitled to more leeway. The testimony here was not so substantially based on the incomparable piece of property as to override the special rule in condemnation proceedings permitting owners to testify.[13]
 
 
 21
 Appellant's counsel inartfully volunteered that the operation and purchase of the Bladensburg Road property "was of necessity a factor that (appellant) took into account." (Tr. 84-85).[14] If we were to conclude that this demonstrates that appellant "substantially relied" on the value of the incomparable property, it would be doubtful whether an owner of more than one piece of property could testify without carrying the burden of demonstrating that his opinion was formed without substantial reliance on the incomparable property. To establish such a rule would, in our opinion, substantially undermine the principle that an owner is permitted to testify in condemnation proceedings without further qualification.[15]
 
 
 22
 Furthermore, we believe that the improper element, the value of the incomparable piece of property, is conceptually distinct and separable from the suitability of the Florida Avenue site for its particular use as evidenced by the relative success of the comparable business operations.
 
 
 23
 In these circumstances, we believe that such factors as the differences in size, frontage and location of the two properties go to the weight of the owner's testimony regarding suitability and not to its admissibility. The trial judge properly could have instructed the jury to disregard the sale price of the incomparable piece of property, while allowing the jury to have the benefit of the owner's testimony of the value of his condemned property based upon the success of the business operated there.[16] For these reasons, we remand with instructions to grant a new trial.
 
 
 24
 So ordered.
 
 MacKINNON, Circuit Judge (dissenting):
 
 25
 We are concerned here with the attempt of counsel for appellants to lay a foundation which would permit Mr. Lewis, a co-owner of the land at 1424 Florida Ave., N.E., to express an opinion based in substantial part upon his estimate of the value of a second parcel also owned by appellants. The trial judge, after ruling that the latter property (located on Bladensburg Road) was not comparable because it was twice the size of the subject parcel and differently proportioned,[1] refused to permit appellant to testify as to his opinion of the value of the subject land to the extent that his opinion would be substantially based upon his estimate of the value of the Bladensburg Road property. The issue on this appeal is thus a very narrow one. The correctness of the trial judge's ruling as to the noncomparability of the two properties is not called into question[2]; rather, the sole issue concerns the propriety of excluding the improperly based opinion proffered by the landowner.
 
 
 26
 I strongly favor the general rule, which the appellants correctly state, that in a condemnation proceeding the opinion of a landowner as to the value of his land is admissible without further qualification, based upon "a presumption of special knowledge arising out of ownership." United States v. 3,698.63 Acres of Land, 416 F.2d 65, 67 (8th Cir. 1969). See also United States v. Sowards, 370 F.2d 87 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); United States v. 131.76 Acres of Land, 296 F.Supp. 1381 (W.D.Mo.1969); 5 Nichols on Eminent Domain § 18.4(2) (rev. 3d ed.1974); 1 L. Orgel, Valuation Under the Law of Eminent Domain § 132 (2d ed.1953). That rule, however, is not determinative of the issue presented by this case: it was designed to allow the owner to testify qua owner despite his apparent lack of other testimonial qualification, and was not intended to permit him to use his ownership status to introduce evidence of value based on improper considerations.[3] In this latter regard, the opinion testimony of a landowner is governed by the same rules of admissibility as govern the testimony of other witnesses. City of Gilroy v. Filice, 221 Cal.App.2d 259, 34 Cal.Rptr. 368 (1963); People v. LaMacchia, 41 Cal.2d 738, 264 P.2d 15 (1953), overruled on other grounds, County of Los Angeles v. Faus, 48 Cal.2d 672, 312 P.2d 680 (1957). Were that not so, the rules of law as to the admissibility of evidence in condemnation proceedings could be avoided merely by putting the landowner on the stand and having him testify to otherwise inadmissible matter. Thus, the issue here is not the acceptability of the landowner as a witness; the fact that Lewis did take the stand and would have been permitted to express a proper opinion[4] indicates there was no challenge to his qualification to testify as owner. Rather, it is the admitted basis of his proposed testimony that is being called into question.
 
 
 27
 Therefore, this appeal is more properly viewed as presenting an issue of admissibility rather than one of testimonial qualification, and as such the proffered opinion should be tested by the traditional rules of evidence:
 
 
 28
 Assuming that a witness is qualified and that he properly conceives the substantive measure of compensation, may he consider data which would be inadmissible under the rules of evidence? We surmise that the answer to this question will usually hinge on whether the rule is one of relevancy or one of competency. On the one hand, if the evidence has little or no bearing on the substantive measure of compensation, the court might reject a witness's opinion based on such evidence. . . . On the other hand, if the rule excluding the evidence rests on a policy against complicated inquiries and undue prolongation of the trial, it is possible for a court to permit a witness to consider this evidence, while at the same time rejecting the evidence on direct examination.
 
 
 29
 1 L. Orgel, supra at § 133 (emphasis added). See also United States v. Sowards, supra (landowner's opinion based entirely on speculation will not sustain a verdict); City of Gilroy v. Filice, supra; 5 Nichols, supra at § 18.42(1). In my view, the trial judge in the present case properly determined that the landowner's opinion, based as it was in substantial part upon an improper element, was incompetent evidence to use in determining the substantive measure of compensation. Clearly here the judge found the Bladensburg Road property to be not comparable to the Florida Avenue property, and thus not only irrelevant to the determination of the value of the latter but very likely prejudicial as well.[5] In making such determinations in a condemnation case, the trial judge has extremely broad discretion. United States v. Reynolds, 397 U.S. 14, 20, 90 S.Ct. 803, 807, 25 L.Ed.2d 12, 18 (1970).
 
 
 30
 Moreover, the admitted basis for Lewis's testimony was not only irrelevant and possibly prejudicial, but was also inadmissible as a matter of law in a condemnation proceeding. The appellant testified at trial that he had paid $120,000 for the 17,974 square feet of land at Bladensburg Road in early 1972 (Tr. 75-76); this, by itself, would not seem to raise the value of the 8946 square feet of land at Florida Avenue significantly above the $64,600 awarded by the court since the subject property is slightly under half the size of the Bladensburg property. Something more must have been expected from the comparison of the two properties.
 
 
 31
 It is fairly discernible from the record before us that what was sought from the comparison of the two properties was to introduce into evidence, for consideration by the jury, the additional value attributable to the Florida Avenue property by virtue of its more favorable location, which gave a business on that property access to a steadily increasing flow of customers. Thus, in cross-examining the Government's expert, appellants' counsel attempted to bring out the importance of traffic flow to the value of a commercial property (Tr. 56), and at oral argument he explained that the greater traffic flow at the Florida Avenue location was one of the reasons why the property should be assigned a higher value than the Bladensburg Road land:
 
 
 32
 (T)here was more road traffic. He had been able to build up at (the Florida Ave.) location in three years what it had took him over 20 years to build up at the other location. And therefore this was a better site. (Transcribed from oral argument.)
 
 
 33
 It is true, of course, that certain "locational" values are compensable in an eminent domain proceeding. For example, in United States ex rel. TVA v. Powelson, 319 U.S. 266, 275, 63 S.Ct. 1047, 1053, 87 L.Ed. 1390, 1398 (1943), the Supreme Court held that market value for condemnation purposes "may be determined in light of the special or higher use of the land when combined with other parcels." Accord, United States v. Fuller, 409 U.S. 488, 490, 93 S.Ct., 801, 803, 35 L.Ed.2d 16, 20 (1973). "(W)hatever in its location, surroundings and appurtenances contributes to the availability of the land for valuable uses is considered proper evidence to place before the trier of fact." 4 Nichols, supra at § 12.2(3) (emphasis added). In such cases, the locational factors are properly considered by the trier of fact in determining the highest and best use of the property for which compensation will be awarded.
 
 
 34
 The evidence on which Mr. Lewis thought to base his testimony was not of this character, however. The highest and best use of the subject property was agreed upon by the parties[6]; evidence as to traffic flow would have added nothing to that determination. Thus, rather than showing the "availability of the land for valuable uses," the particular "locational" evidence on which appellant would have relied here would have tended to show the prospects of the site for producing future business profits. Indeed, it appears to have been the intent of appellants' counsel to bring before the trier of fact evidence of the future profitability of the business conducted at the Florida Avenue address by means of the comparison with the Bladensburg Road business:
 
 
 35
 What I had hoped to do is to have (Lewis) establish a comparison of both operations as an entity, and then to deduct the portion that he does not own . . . . Now that is the approach that I was using; if Your Honor please, because they are comparable business operations.
 
 
 36
 (Tr. 78-79, emphasis added.) At one point during oral argument, he summed up the importance of the business conducted on the property to his case:
 
 
 37
 The argument that Mr. Lewis' business seems to have nothing to do with it, that's not true. This was a business piece of property, it was a commercial piece of property, and the amount of business a man can do in the place is obviously going to be an influencing factor on what he will pay for it. (Transcribed from oral argument.)
 
 
 38
 That evidence of this nature is inadmissible if offered directly in a condemnation proceeding can be seen by way of analogy to two other types of excluded evidence. First it is the well-accepted rule in the federal courts that evidence of profits to be derived from a business in the future is too speculative, uncertain and remote to be considered as a basis for computing or ascertaining market value in condemnation proceedings. Such profits are not generally considered "property" within the meaning of the constitutional provision forbidding the taking of property by eminent domain except upon payment of just compensation. United States v. Petty Motor Co., 327 U.S. 372, 377-78, 66 S.Ct. 596, 599, 90 L.Ed. 729, 734 (1946); United States ex rel. TVA v. Powelson, supra, 319 U.S. at 281-83, 63 S.Ct. 1047, 1055, 87 L.Ed. 1390, 1401; Mitchell v. United States, 267 U.S. 341, 345, 45 S.Ct. 293, 294, 69 L.Ed. 644, 648 (1925); Joslin Manufacturing Co. v. City of Providence, 262 U.S. 668, 675, 43 S.Ct. 684, 688, 67 L.Ed. 1167, 1174 (1923); Bothwell v. United States, 254 U.S. 231, 233 (1920); A. G. Davis Ice Co. v. United States, 362 F.2d 934, 936 (1st Cir. 1966); Stipe v. United States, 337 F.2d 818, 821 (10th Cir. 1964).
 
 
 39
 Second the locational value of land as it relates to future patronage is close to the classic definition of goodwill. Commentators on law and accounting in the British Commonwealth have found goodwill to include a locational factor: "the probability that old customers will resort to the old place." A. K. Sangster, Commercial Goodwill 7 (Arthur Capper Moore Research Lecture 1951), quoting Cruttwell v. Lye, 34 Eng.Rep. 129, 133 (Ch. 1810). Accord, R. Dicksee & F. Tillyard, Goodwill and its Treatment in Accounts 46 (4th ed. 1920); P. Leake, Commercial Goodwill (1930); H. See, Goodwill as a Business Asset 9-10 (1937). In a long series of tax cases, American federal courts have used a similar definition. See, e. g., Houston Chronicle Publishing Co. v. United States, 481 F.2d 1240, 1247 (5th Cir. 1973), cert. denied, 414 U.S. 1129, 94 S.Ct. 867, 38 L.Ed.2d 754 (1974); Skilken v. Commissioner, 420 F.2d 266, 270 (6th Cir. 1969); Karan v. Commissioner, 319 F.2d 303, 306 (7th Cir. 1963); Boe v. Commissioner, 307 F.2d 339, 343 (9th Cir. 1962). See also G. Catlett & N. Olson, Accounting for Goodwill 9-12 (Accounting Research Study No. 10, 1968); Merriam-Webster New International Dictionary 979 (3d ed. 1961) (second definition of "goodwill"). This type of locational value of land is not admissible in condemnation proceedings:
 
 
 40
 (C)ompensation for that interest (taken by the sovereign) does not include future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of good-will which inheres in the location of the land, or other like consequential losses which would ensue the sale of the property to someone other than the sovereign. No doubt all these elements would be considered by an owner in determining whether, and at what price, to sell. No doubt, therefore, if the owner is to be made whole for the loss consequent on the sovereign's seizure of his property, these elements should properly be considered. But the courts have generally held that they are not to be reckoned as part of the compensation for the fee taken by the Government.
 
 
 41
 United States v. General Motors Corp., 323 U.S. 373, 379, 65 S.Ct. 357, 360, 89 L.Ed. 311, 319 (1945) (emphasis added). Accord, United States v. Petty Motor Co., supra at 377-78, 66 S.Ct. at 600, 90 L.Ed. at 735; R. J. Widen Co. v. United States, 357 F.2d 988, 994, 174 Ct.Cl. 1020, 1029 (1966); In re Edward J. Jeffries Homes Housing Project, 306 Mich. 638, 651, 11 N.W.2d 272, 276 (1943); Newark v. Cook, 99 N.J.Eq. 527, 537-38, 133 A. 875, 879 (Ch. 1926), aff'd, 100 N.J.Eq. 581, 582, 583, 584, 135 A. 915, 916, cert. denied, 274 U.S. 757, 71 L.Ed. 1337 (1927); Banner Milling Co. v. State, 240 N.Y. 533, 539-40, 148 N.E. 668, 670, cert. denied, 269 U.S. 582, 46 S.Ct. 107, 70 L.Ed. 423 (1925); Reeves v. Dallas, 195 S.W.2d 575 (Tex.Civ.App.1946); 2 Nichols, supra at § 5.76; 1 L. Orgel, supra at § 75.[7] Evidence tending to prove such value is properly excluded by the trial judge. See United States v. Petty Motor Co., supra, 327 U.S. at 378, 66 S.Ct. at 599, 90 L.Ed. at 734; United States v. General Motors Corp., supra at 379, 65 S.Ct. at 360, 89 L.Ed. at 319.
 
 
 42
 While the locational evidence on which Mr. Lewis sought to base his testimony in this case does not exactly fit either of these rules, it is more readily analogous to them than to any category of admissible evidence. The appellant's testimony here would have been based on an element of value connected with the future prospects of a business, and value of this type is simply too speculative to be considered by a condemnation jury. In my opinion, the prohibition against the direct use of this evidence also precludes its use as the basis of a witness's opinion.
 
 
 43
 Appellants' counsel argues that the improper comparison was but "one factor" in forming his client's opinion as to the value of the Florida Avenue property (Tr. 84), and that there is a "distinction between partial reliance as one influencing factor and not at all" (Tr. 85). Numerous cases, however, have held that the testimony of a witness based in part on inadmissible elements may be excluded at the discretion of the trial judge. See, e. g., Sacramento & San Joaquin Drainage Dist. v. Reed, 215 Cal.App.2d 60, 29 Cal.Rptr. 847 (1963); Temescal Water Co. v. Marvin, 121 Cal.App. 512, 9 P.2d 335 (1932); Central Illinois Light Co. v. Nierstheimer, 26 Ill.2d 136, 185 N.E.2d 841 (1962); Chicago v. Giedraitis, 14 Ill.2d 45, 150 N.E.2d 577 (1958); Illinois Power & Light Corp. v. Talbott, 321 Ill. 538, 152 N.E. 486 (1926); Russell v. Highway Comm'r, 147 Kan. 297, 77 P.2d 199 (1938); Oklahoma Gas & Electric Co. v. Miller Bros. 101 Ranch Trust, 173 Okl. 101, 46 P.2d 570 (1935).[8] In the final analysis, the admissibility of such an opinion will turn on two points. First, the trial judge must consider the extent to which the testimony is based on the value of the parcel which has been found to be not comparable. If it is substantially so based, or the other property is "the chief (element) in the (calculation),"[9] such an opinion is inadmissible and the fact that the witness did not rely completely on the inadmissible matter will not make the testimony competent. The second major consideration is whether the witness can isolate and ignore the improper elements, thereby basing his testimony only on those factors which are properly considered:
 
 
 44
 Whether an estimate based only in part on inadmissible elements will be excluded will usually depend on whether the improper elements can be separated from those which are properly considered.
 
 
 45
 1 L. Orgel, supra at § 133.
 
 
 46
 If a witness has based his opinion in a material degree upon elements which cannot legally be considered, without separating such elements from those which may legally be considered, such opinion is not competent.
 
 
 47
 5 Nichols, supra at § 18.42(1).
 
 
 48
 In the case before us now it has been made abundantly clear that the inadmissible comparison was both a substantial and integral part of the opinion sought to be expressed by the landowner. Counsel admitted as much to the trial judge when he stated:
 
 
 49
 (T)here is no way on earth that he can answer, if he is asked, without replying to the question: Did you take Bladensburg Road into account in any fashion. In reaching that figure, he has got to answer "yes."
 
 
 50
 (Tr. 80). A further indication of appellant's essential reliance on the inadmissible Bladensburg Road property came shortly thereafter, when his counsel stated:
 
 
 51
 I indicated that this was of necessity a factor that the man took into account that he can't disregard that which he honestly takes into account. It is one factor. There is no question about it in his mind. If he stood up before Your Honor and said, "My opinion of the value of that land is X dollars; and in reaching that value I am not in any wise influenced by my operation and my purchase further out the street on Bladensburg Road," he would not be telling the truth.
 
 
 52
 (Tr. 84-85). Nowhere in the record or briefs does appellant even suggest that his value opinion could have been given without substantial reliance upon the noncomparable property.[10]
 
 
 53
 It is therefore my conclusion that appellant did propose to base his opinion testimony in substantial degree upon an improper factor. In this circumstance, recognizing the broad discretion vested in the trial judge over such matters, United States v. Reynolds, supra, I would affirm his refusal to allow the landowner to express an opinion based on such impermissible factors. It should be noted that this result would not always hold true unless there has been a determination that the improper element constituted both an integral and a significant part of the basis for the landowner's testimony.
 
 
 54
 For the above reasons, I respectfully dissent.
 
 
 
 [1]
 The lots total 8,964 square feet
 
 
 [2]
 The Bladensburg Road property was approximately twice the size of the Florida Avenue property, consisting of about 17,964 square feet compared with 8,946 square feet. The owner operated similar auto transmission businesses on both properties and leased land adjacent to the Florida Avenue property, bringing the total area used by the owner at both locations to approximately the same size. The parties stipulated that the property was improved by a one-story commercial garage, used as an automotive transmission repair shop, and that the owners had purchased the property in 1968 for the sum of $50,000. Appellant's Br. at ii-iii
 
 
 [3]
 The proof of the value of property in condemnation proceedings is merely a special case of judicial proof in general and is governed by the rules of evidence developed in other actions at law. But this simple fact is obscured by certain peculiar doctrines that have been developed in condemnation cases. The doctrines (include) the permissible sources of the tribunal's information
 
 
 [1]
 Orgel, supra, ch. XI at 543 (emphasis added)
 
 
 [4]
 (T)he owner of the land taken is generally held to be qualified to express his opinion of its value merely by virtue of his ownership. He is deemed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, to have a reasonably good idea of what it is worth. The weight of his testimony is for the jury (to determine)
 
 
 [5]
 Nichols on Eminent Domain § 18.4(2) at 106-07 (rev. 3d ed. 1975)
 
 
 [5]
 See, e. g., State ex rel. Herman v. Lopez, 8 Ariz.App. 61, 63, 442 P.2d 884, 886 (1968) (cross-examination of owner about how he arrived at valuation affects weight but not competency); McCaffery v. Northern Pacific Ry. Co., 22 N.D. 544, 134 N.W. 749, 750 (1912) (admissibility under North Dakota rules does not rest on actual knowledge or on a presumption of knowledge)
 
 
 [6]
 Southwick v. Massachusetts Turnpike Authority, 339 Mass. 666, 668, 162 N.E.2d 271, 274 (1959) ("whether the witness has the necessary knowledge about his property to enable him to express an opinion as to its market value is a preliminary question of fact for the judge")
 
 
 [7]
 In this sense, it would appear that courts have reached differing results on evidentiary questions because of a general confusion over exactly why it is that an owner is permitted to testify
 The fallacy of (the presumption rule) is that it is based upon a mistaken assumption in law that the right of an owner of property to testify depends upon some presumption of fact arising from the ownership qualifying him as an expert to testify; whereas his qualification to testify does not depend upon presumption, but upon the principle that an owner is, in law, qualified to testify, and his testimony is, because of his relationship as owner, competent and admissible on the question of value of his property.
 McCaffery v. Northern Pacific Ry. Co., 22 N.D. 544, 546, 134 N.W. 749, 750 (1912).
 
 
 [8]
 See, e. g., Brown v. Town of Eustis, 293 F. 197, 198 (S.D.Fla.1923)
 
 
 [9]
 Cf. United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, 281-83, 63 S.Ct. 1047, 1055-1056, 87 L.Ed. 1390, 1401-1402 (1943); A.G. Davis Ice Co. v. United States, 362 F.2d 934, 936 (1st Cir. 1966); Stipe v. United States, 337 F.2d 818, 821 (10th Cir. 1964)
 . . . (N)ot all losses suffered by the owner are compensable under the Fifth Amendment. In absence of a statutory mandate . . . the sovereign must pay only for what it takes, not for opportunities which the owner may lose.
 319 U.S. at 281-82, 63 S.Ct. at 1056, 87 L.Ed. at 1401 (citations omitted).
 
 
 [10]
 Clark v. United States, 155 F.2d 157 (8th Cir. 1946)
 In eminent domain proceedings the rule is that all facts which an ordinarily prudent man would take into account before forming a judgment as to the market value of property he contemplates purchasing is (sic) relevant and material. The landowner should be allowed to state and to have his witnesses testify to every fact concerning the property which he would normally or ordinarily be disposed to put forth in order to place it in an advantageous light if he were attempting to negotiate a sale of it to a private individual. . . .
 Id. at 162.
 
 
 [11]
 The Government witness agreed that use as an auto repair shop constituted the "highest and best use of the property," a proper consideration for valuation in condemnation proceedings. See Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236, 1244 (1934). See generally 1 Orgel, supra, § 30 and cases cited therein
 
 
 [12]
 See generally Nichols on Eminent Domain, supra, § 18.42(1)
 It has been held that, though a court may properly strike from the record testimony of value which is based upon an erroneous theory of value, this ruling should not be made when a portion only of the testimony of the witness is improper. In such case a motion should be directed to that portion of the testimony which is objectionable.
 Id. at 18-184, 18-185 (citations omitted).
 
 
 [13]
 Relevancy and competency traditionally have been viewed liberally with respect to "expert" testimony in condemnation proceedings
 In general, unless the testimony of the witness is such as to show a complete misconception of the proper method of determining value, or ignorance of the subject matter, his testimony will be admitted; and the insufficiency of his information, or the basis of his opinion will affect the weight of his testimony.
 
 
 [1]
 Orgel, supra, § 133 at 576-77 (citations omitted)
 We believe that the special rule permitting owners to testify in condemnation proceedings demands an even greater deference to the owner's testimony.
 
 
 [14]
 The admissibility of appellant's testimony was argued outside the presence of the jury. The argument proceeded in pertinent part as follows:
 APPELLANT'S COUNSEL: May I address the Court?
 THE COURT: Yes.
 APPELLANT'S COUNSEL: As Your Honor knows, I in no way want to trangress any ruling of Your Honor. I had anticipated asking this gentleman ultimately the key question as to what he thought this particular piece of property is worth. And there is no way on earth that he can answer, if he is asked, without replying to the question: Did you take Bladensburg Road into account in any fashion. In reaching that figure, he has got to answer "yes".
 Now if that is Your Honor's ruling, then he can't testify another word.
 THE COURT: That is the Court's view on the matter. He is not a real estate expert.
 APPELLANT'S COUNSEL: I understand that.
 THE COURT: He is limited in his testimony as to the value of this property being taken, giving his opinion as to that. But he can't go into other real estate values. That is the opinion of the Court. Is that the position of the government?
 GOVERNMENT COUNSEL: Yes, Your Honor.
 THE COURT: . . . I have ruled on it.
 APPELLANT'S COUNSEL: I'm sorry. Your Honor knows I had not anticipated this ruling, and I am trying to see how to proceed. This is sort of a body blow to my case.
 THE COURT: I think the testimony of a property owner is of necessity when he is testifying as a property owner when he gives his view of the value of his own property for whatever value that opinion is worth.
 THE COURT: But I am not going to let him (go in) to (sic) into the value of other real estate.
 THE COURT: Does the government agree with that form?
 GOVERNMENT COUNSEL: He can go ahead and ask the questions, Your Honor. I strongly suspect that I am going to move to strike the testimony.
 THE COURT: He is not going into the Bladensburg property at all. You are limiting him to the Florida Avenue property. Right?
 APPELLANT'S COUNSEL: That's all I am going to ask; yes, in light of Your Honor's ruling.
 THE COURT: His opinion as to its value?
 APPELLANT'S COUNSEL: Yes, Your Honor.
 THE COURT: Can't he give that?
 GOVERNMENT COUNSEL: Yes, Your Honor, if he has something to substantiate it.
 THE COURT: Now wait a minute. The minute you say that he will try to substantiate it by showing what he paid for this property on Bladensburg Road and what he thinks that is worth.
 GOVERNMENT COUNSEL: Your Honor, I would cite United States versus Sallards (sic), referring to Sowards v. United States, 370 F.2d 87 (10th Cir. 1966)) which stands for the proposition that there has to be some substantiation to the land owner's testimony of value. The citation of this particular case is 370 Fed.2d 87.
 THE COURT: You are not helping me very much. What do you mean by substantiation?
 GOVERNMENT COUNSEL: Perhaps he can give testimony as to what he paid for it
 THE COURT: What difference is it going to make as to what his testimony is going to be if he is competent to testify? If he says the property is worth $100,000.00, you say that is not competent, I suppose. But if he says it is worth $60,000.00, you would say it is competent. Is that what you are trying to say?
 GOVERNMENT COUNSEL: Well, I certainly wouldn't argue if he said the value was $60,000.00, Your Honor. I don't think we would be here.
 THE COURT: I don't think you would either. What is it you propose to do . . .? I am as confused as anybody in the courtroom.
 APPELLANT'S COUNSEL: That's what bothers me. My understanding of the law was that the owner was entitled to testify as to value, and that he was also entitled to say upon what he based that opinion of value. If he is wrong on it, it is amply demonstrated and the jury can then disregard it.
 THE COURT: No; I don't think he can testify as an expert.
 APPELLANT'S COUNSEL: Yes, Your Honor. . . .
 As I read the requested instruction that these gentlemen submitted to Your Honor it is instruction 15 (sic) referring to plaintiff's requested instruction No. 14), Your Honor one thing they say in there specifically is that consideration may be given to his testimony as to why he thinks the land is valuable.
 And it was on that basis my impression is that what we are really talking about is the weight that should be given to his testimony. And Your Honor, I think, hit the nail on the head a minute ago when you asked my learned colleague if the man were asked, could he give his reason for his opinion.
 GOVERNMENT COUNSEL: And that is why I move to strike his testimony, Your Honor. If he has no basis to give his testimony, which (appellant's counsel) indicates that he does not, then I would have to move to strike his testimony.
 APPELLANT'S COUNSEL: No; I didn't indicate that at all. I indicated that this was of necessity a factor that the man took into account that he can't disregard that which he honestly takes into account. It is one factor. There is no question about it in his mind. If he stood up before Your Honor and said, "My opinion of the value of that land is X dollars; and in reaching that value I am not in any wise (sic) influenced by my operation and my purchase further out the street on Bladensburg Road," he would not be telling the truth. And he will be telling this Court the truth.
 THE COURT: Do you mean he would take into consideration what he paid for the property on Bladensburg Road?
 APPELLANT'S COUNSEL: Of course he would and what he is doing with it and how good it is to him because he is a buyer. He knows the best use of it.
 THE COURT: Do you object to it?
 GOVERNMENT COUNSEL: Yes, Your Honor. I do object to his testifying as to value if he has no basis for that value.
 THE COURT: I'll substantiate the objection. If he has to rely on the Bladensburg property, I'll rule that he may not state an opinion as to its value.
 APPELLANT'S COUNSEL: Your Honor, I only indicated, and I make a distinction between partial reliance as one influencing factor and not at all.
 THE COURT: That is my view of the matter. He is not qualified as an expert, and he is not qualified to base his opinion upon the operation of the Bladensburg Road property.
 
 
 [15]
 See, e. g., Arkansas State Highway Comm'n v. Russell, supra
 It is at once apparent that if we sustain the commission's contention it will hardly be possible in the future for a landowner or an expert witness to give an admissible opinion about the value of the property. In nearly every instance a landowner who has known his land for years, or an expert witness who has acquainted himself with a piece of property, takes into account facts that he knows only by hearsay or that for some other reason would not be admissible as independent evidence upon the examination in chief. If the witness's candid admission that he has considered such matters destroys his testimony, only a dishonest or an ill-informed witness can give an admissible opinion about the value of property.
 
 
 [398]
 S.W.2d at 202 (emphasis added). See also United States v. 86.52 Acres of Land, 250 F.Supp. 619 (W.D.Mo.1966) (landowner's testimony based on facts not established and, in part, on erroneous legal assumptions admissible as exception to expert witness rule requiring support by facts upon which opinion is based)
 
 
 [16]
 
 PLAINTIFF'S REQUESTED INSTRUCTION NO. 14
 The owner of the property involved in this condemnation action is permitted to testify as to his opinion of the fair market value of his property. The testimony of an owner is proper, but the property owner must testify as to the market value of the land and not as to the personal value of the property to such property owner. You should distinguish between his testimony as to facts about his property and his testimony as to his opinion. His testimony as to the fair market value of his property is to be weighed and considered by you in the same manner as that of any other witness expressing an opinion as to fair market value. Consideration may be given to his testimony as to why he thinks the land is valuable; however, the fact that he places some value upon it because of his personal interest in it is not a fair basis for determining market value. If you should decide that the owner has not made a sufficient investigation in order to inform himself about all material facts, not only about his own property but about the market as well, or that his opinion was expressed without sufficient knowledge of all material facts for form (sic) an opinion or if the reasons advanced by him are unsound, you may disregard his opinion entirely, or give to it such weight as, in your judgment, you think it merits after considering all the evidence before you. Furthermore, in deciding what weight to give to such testimony, you may consider the extent to which the interest of the witness in the outcome of these proceedings may have affected his opinion.
 
 
 [1]
 The Bladensburg Road property encompasses 17,974 square feet, while the Florida Ave. property owned by appellants comprises 8946 square feet. However, appellants leased an additional 8950 square feet adjacent to the Florida Ave. location and used the entire 17,896 square feet to operate a transmission repair business, similar to the one operated at the Bladensburg Rd. location. Counsel for appellants explained their theory of comparison to the trial judge as follows:
 MR. COLLINS: What I had hoped to do is to have him establish a comparison of both operations as an entity, and then to deduct the portion that he does not own, which is the way he arrives at the value; and which I think is the legitimate method of doing it. It is up the jury (sic) to decide how much credit to give it. Now that is the approach that I was using; if Your Honor please, because they are comparable business operations. They include a comparable square footage of ground and they include substantially the same buildings. Therefore, it is a simple matter, it seems to me, for him to allocate so much for the portion of the ground that he does not own.
 (Tr. 78-79). The trial judge correctly perceived that the allocation which counsel sought was not such a simple matter, however. The subject property is a rectangular parcel of land with a frontage of approximately 63.9 feet and a depth of 140 feet (Tr. 28); if the lot which appellants leased adjacent to the subject property is taken into account, the frontage totals 118 feet (Tr. 68). Appellants' counsel sought to make a comparison between that lot (118 by 140) and the Bladensburg Road property, which had a 73 foot frontage and a 275 foot depth. The Government's expert at one point explained the problem with this type of a comparison:
 Land is not only square feet; but, it is shape. And if you take a piece of land that's got 200 feet of frontage by 115 feet of depth as compared to a parcel that would be, let's say, to give the same area of 25,000 feet, it might have to be 200 feet in depth by 150 (sic) feet of frontage. Now, we can all appreciate that that land certainly can't produce as much income as that front land where you would put your development. So therefore, when you take a piece of land that has generous frontage as compared to depth, you are talking about superior plottage as compared with 69 by 140 feet of depth. I don't know whether that explains it clearly or not. But front feet is worth more than depth.
 (Tr. 31-32). When appellants' counsel questioned the expert specifically on a comparison of the properties at issue here, the following exchange occurred:
 BY MR. COLLINS:
 A. Apropos to the discussion we had before, that we don't make the market, we read the market, when we go in to value land in an area, in order to determine plottage and maximum degree of productivity you first try to determine what are the typical average depths of the lots. In this square the average depths are relatively deep.
 Q. Sir, so the record is clear, you are talking about the Bladensburg property? A. The whole square was developed with very, very deep lots. Consequently, in studying the market and determining what people have been paying or were paid based upon sale, the typical or normal depth of a lot in that square would be much greater than over on H Street or Florida Avenue where we are talking of 100 foot, 120 or 140 foot. Here you are talking from 240 to 500 foot lots.
 THE COURT: You are saying: Therefore, they are not comparable.
 THE WITNESS: They are not comparable at all.
 (Tr. 69-70).
 
 
 [2]
 Even if this ruling were in dispute, however, I am satisfied that the trial judge made the correct decision in refusing to allow this comparison. It is well established that the question of whether the conditions surrounding a second tract of land are sufficiently similar to those of the subject tract so that evidence of the value of the former may be admitted to prove the value of the latter rests largely within the discretion of the trial judge. District of Columbia Redevelopment Land Agency v. 61 Parcels of Land, 98 U.S.App.D.C. 367, 235 F.2d 864 (1956); Annot., 85 A.L.R.2d 110, 126 (1962). Although it has been held that a mere discrepancy in size between the two parcels will not render evidence of the value of a second tract inadmissible to prove the value of the land in controversy, see generally Annot., 85 A.L.R.2d 110, 143 (1962); Annot., 18 A.L.R. 869, 884 (1939), it appears in the present case that the trial judge may well have had reasons beyond the mere size discrepancy between the Florida Ave. and Bladensburg Rd. properties for excluding evidence of the value of the latter. First, the appellant sought to relate the values of the two properties by a very subjective process which the trial judge might have concluded would prejudice the jury far in excess of its slight probative weight. Second, the expert appraiser for the Redevelopment Agency had testified that the two parcels were not at all comparable because of the differing depths of lots in the two areas (the Bladensburg property itself being approximately twice the depth of the Florida Ave. lot). See note 1 supra. Third, no evidence that the two tracts are indeed comparable appears in the briefs or record, except for appellant's statement and the fact that a similar business was conducted on both. Finally, one factor on which the comparison would have been based at least in part is itself inadmissible. See text at ---- - ---- of U.S.App.D.C., at 347-350 of 534 F.2d infra
 
 
 [3]
 The majority summarizes the precedent on this issue as taking one of two positions: either that an owner is permitted to testify qua owner, or that he is "merely granted a presumption which, if not rebutted, entitles him to take the stand to testify as an 'expert' on his own behalf." Maj.Op. at ---- of --- U.S.App.D.C., at 339 of 534 F.2d. It is asserted that "under either standard the owner's testimony should have been admitted in this case." Maj.Op. at --- of --- U.S.App.D.C., at 340 of 534 F.2d. Assuming arguendo the validity of the majority's analysis, I disagree with their conclusion
 As to the first line of authority, the case law is clear that an owner is permitted to testify qua owner "because of his close relationship with the land." Maj.Op. at note 4 and accompanying text. Testimony based on intimate knowledge of another parcel of land does not fall within the purpose or meaning of the rule. Thus, although the landowner may be qualified to testify, portions of his proffered testimony may nevertheless be held inadmissible. Nor does the majority's citation of Wigmore, supra at §§ 714, 716, see Maj.Op. at --- of --- U.S.App.D.C., at 339 of 534 F.2d, support their broad rule; it only confirms that an owner need not prove "cultivation of the judgment by special experience . . . before (he) can be permitted to form and express an opinion on values," id. at § 712, and not that an owner may consciously incorporate inadmissible elements into his testimony. Compare dissent, at --- - --- of --- U.S.App.D.C., at 346-347 of 534 F.2d.
 Regarding the second line of authority, that a landowner is presumed to be an expert in the valuation of his own property unless the contrary is shown to be true, admissibility is said to depend upon whether the landowner's opinion rests on "some independent competent and relevant basis, such as experience in buying or selling land, general knowledge of land values in the area or sales of comparable land, or some particular knowledge relating to the land in question." Maj.Op. at --- of --- U.S.App.D.C., at 339 of 534 F.2d. Thus, where a lack of such knowledge is affirmatively shown, the landowner's opinion will be held inadmissible. If this rule obtains, however, I believe that the same result must also hold where it is affirmatively shown that the landowner's opinion is based on experience or knowledge which has been ruled to be not competent. Indeed, the majority admits that the trial judge may refuse to permit an otherwise qualified expert witness to testify concerning an opinion which is based on such grounds "because the probative value of such expert testimony, stripped of its claim of expertise, is very low, while the likelihood that it will confuse the trier of fact is very high." Maj.Op. at --- of --- U.S.App.D.C., at 340 of 534 F.2d. Compare dissent at note 5. Where the opinion of a landowner rather than an expert is at issue, however, the majority would allow the trial judge considerably less discretion. Their rationale for restricting the trial judge's discretion in such case is unclear, but appears to be rooted in the fact that the witness is a landowner. This was the basis for both cases cited by the majority in support of the proposition, Arkansas State Hwy. Comm'n v. Mullens, 255 Ark. 796, 502 S.W.2d 626 (1973); and Arkansas State Hwy. Comm'n v. Russell, 240 Ark. 21, 398 S.W.2d 201 (1966). In each of those cases, the court found no inadmissible elements in the landowner's direct testimony, and affirmed the general rule that a landowner is qualified to testify "by reason of his relationship as owner." Mullens, 255 Ark. supra at 797, 502 S.W.2d at 627. But as I have pointed out above, this general rule should not be extended to admit a landowner's testimony based on intimate knowledge of another parcel of land. It is a special knowledge of his land rather than experience that qualifies the owner to testify, and as a result, where such knowledge is shown to be lacking, the landowner's testimony may be excluded. 3 Wigmore, Evidence § 714 n.9 (Chadbourn rev. ed. 1970) (relying on cases cited by the majority at --- of --- U.S.App.D.C., at 339 of 534 F.2d). One example of this result is the "business profits rule" cited by the majority at n.9, under which the profitability of a business conducted on the subject land is held to be an improper element of market value because future profits cannot be predicted with any certainty. Similarly, when an owner seeks to base his testimony not on his special knowledge of the land but on the operating results of a business located on a site already ruled not comparable, that testimony should be excluded. Thus this second line of authority is no more reason to permit a landowner to incorporate inadmissible elements into his testimony than was the first.
 Moreover, it is not clear what, if any, evidence can now be refused by the trial judge when offered by a landowner-witness. The majority hints at some limits which, when crossed, would justify the judge in exercising his discretion to refuse to permit the landowner's testimony. But it is hard to imagine a stronger case for inadmissibility than the one now before us, where appellant's counsel has admitted that the owner's testimony would be inseparably and substantially based on factors traditionally held to be irrelevant to market value. See text at ---- - ----, ---- - ---- of --- U.S.App.D.C., at 347-350, 350-351 of 534 F.2d infra; note 1 supra. Thus, the majority has for all practical purposes transferred the authority to decide what evidence is to be placed before the jury in condemnation cases to the landowner and his counsel.
 
 
 [4]
 As to this evidence, the district judge, in ruling that the appellant could not base his opinion on the Bladensburg Road property, clearly indicated that he was not barring the landowner from giving a properly based opinion:
 He is limited in his testimony as to the value of this property being taken, giving his opinion as to that. But he can't go into other real estate values. That is the opinion of this court.
 (Tr. 80, emphasis added.)
 
 
 [5]
 If this testimony is allowed to come in, the jury will be required to make a detailed examination into the reasons for the success of the two businesses; the books, personnel, advertising scheme, and quality of service rendered; and all other factors relevant to business location decisions. Although the majority relies on the abilities of the jury to evaluate these factors and to weigh the landowner's self-interest, Maj.Op. at ---- of --- U.S.App.D.C., 340 of 534 F.2d, they also note that expert witnesses (who are presumably able to aid the jury in its task of evaluation) are not permitted to introduce such evidence precisely because of its low probative value and possibility of jury confusion. The majority gives no indication of why the jury is less likely to be confused by this testimony when it comes from a landowner. Such a broad inquiry by a jury as is allowed by the majority here has never before been permitted in eminent domain cases, and has been impliedly rejected by the Supreme Court. See United States v. Reynolds, 397 U.S. 14, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970)
 
 
 [6]
 See Appellants' Brief at 2; J.App. 4
 
 
 [7]
 This rule is subject to two major exceptions, neither of which would be relevant on the facts of this case. First, compensation for the loss of goodwill has been allowed when the government has taken or destroyed the business apart from the taking of the land. See 4 Nichols, supra at § 13.31. But in the present case the appellants' business has been neither taken nor destroyed. Second, owners have recovered for goodwill where the condemned property could not realistically be valued apart from the business. See Michigan State Hwy. Comm'n v. L & L Concession Co., 31 Mich.App. 222, 232, 187 N.W.2d 465, 470-72 (1971), and cases cited therein. Here, however, the business is not such an integral part of the land that the property cannot be valued without it; the trial court in fact, has already done so
 
 
 [8]
 Appellant cites two Arkansas cases in support of his view that the testimony of an owner who bases his valuation in part on property which the court had ruled not comparable is admissible, and that the objection goes only to the weight of his testimony. Arkansas State Highway Comm'n v. Mullens, 255 Ark. 796, 502 S.W.2d 626 (1973); Arkansas State Highway Comm'n v. Russell, 240 Ark. 21, 398 S.W.2d 201 (1966). Both cases are inapposite here, however, since in neither was there any "suggestion that any part of (the landowner's) testimony on direct examination was inadmissible." Russell, supra at 22, 398 S.W.2d at 202. Since the jury had already heard the incorrectly based opinion testimony, it was entirely proper for the trial judge in his discretion to refuse to strike it when the improper basis was revealed on cross-examination, instead allowing the cross-examination to go to the weight of the opinion testimony. Moreover, since both cases involved a taking of less than the entire parcel, the trials were primarily concerned with the issue of severance damages. Finally, in neither case was the improperly relied upon element shown to be a substantial basis of the opinion
 In a third case that appellant cites as supporting his argument, United States v. 86.52 Acres of Land, 250 F.Supp. 619 (W.D.Mo.1966), there was never a determination by the court that a basis for the landowner's opinion was inadmissible or improper, but merely that his opinion was not supported by any factual basis or was in conflict with undisputed facts. The court only ruled that such an opinion was insufficient to support a verdict but did have enough probative value to require that the court not accept the testimony of the condemnor's expert witnesses as the sole figure to which remittitur should be ordered.
 
 
 [9]
 San Diego Land & Town Co. v. Neale, 88 Cal. 50, 62, 25 P. 977, 980 (1891)
 
 
 [10]
 If it were possible for the appellant to have testified as to the value of his land without substantial reliance upon the inadmissible comparison as the majority appears to suggest, see Maj.Op. at note 12 and accompanying text then he was free to do so. See note 4 supra. The fact that he could not is further evidence of the substantial nature of the inadmissible element