JOSEPH E. AND MARGARET A. KOZLIK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kozlik v. Commissioner
Docket No. 1809-76.
United States Tax Court
T.C. Memo 1980-158; 1980 Tax Ct. Memo LEXIS 428; 40 T.C.M. (CCH) 296; T.C.M. (RIA) 80158; May 5, 1980, Filed Robert M. Tyle, for the petitioners. Timothy M. Cotter, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code *429 [1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $1,001.64 and $1,506.32, respectively, in petitioners' 1969 and 1970 federal income taxes. We must decide whether petitioners are entitled to a net operating loss deduction for 1969 in an amount in excess of that allowed by respondent and whether they are entitled to a net operating loss deduction for 1970 (and, if so, the amount thereof). Resolution of the issues depends upon the amount of a casualty loss deduction under section 165(a) to which petitioners are entitled for 1972. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed *430 their original and amended joint federal income tax returns for 1969 and 1970 and their joint federal income tax return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided at Corning, New York. Petitioners purchased a two-story house in Corning, New York, in 1964 for approximately $9,500. Prior to 1972, they made improvements to the property which cost them more than $15,000. The house had a basement, four rooms on the first floor, and three bedrooms and a bath on the second floor. They had no garage. Petitioners used the property as their residence. In June of 1972, the property and its contents were damaged by a flood. Water rose to a height of six feet on the firs floor. Everything in the cellar and the first floor was ruined. The lawn was destroyed. A one-story ell containing a bedroom was demolished by the flood. In addition to the lawn and the ell and its foundation, the floors, walls, insulation, doors, and windows on the first floor had to be replaced. Kitchen cabinets had to be repaired. Petitioners paid a contractor, Chemung Building and Hearting Co., $7,050 to make repairs to the *431 flood damaged portion of the house. Petitioners, two of their sons, friends and neighbors cleaned up the property and did much of the repair work. Petitioners spent $3,400 for materials in addition to what they paid the contractor. Some repairs were made to improve the condition of the second floor of the house, undamaged by the flood, and, except for a continuing problem with water leakage in the basement and damage to their driveway which petitioners have not repaired, the house was restored to better condition than immediately prior to the flood.
With respect to the flood damage they suffered, petitioners received a loan from the Small Business Administration (hereinafter referred to as the SBA). The SBA later forgave repayment of $5,000 of the loan. On their joint 1972 federal income tax return, petitioners claimed a casualty loss deduction under section 165(a) in the amount of $37,661.12. They applied $14,712.26 against their income for 1972 and carried back the balance to 1969 and 1970. Petitioners now concede that the loss should be reduced by $5,000; i.e., the amount of the SBA indebtedness which was forgiven. In his notice of deficiencies, respondent allowed $17,124.32 *432 of the claimed deduction and disallowed the remainder for lack of substantiation, reducing the carryback loss for 1969 to $2,461.56 and eliminating a net operating loss deduction for 1970. Respondent determined the damage to petitioners' real estate to be $7,713.20. The fair market value of petitioners' residence was $22,000 immediately before the flood and $12,000 immediately thereafter. Its basis in petitioners' hands exceeded $10,000. OPINION The issue here is purely factual. The parties agree as to the amount of the deduction to be allowed for personalty lost in the flood. Petitioners now concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only dispute, then, is the amount of the loss to realty, respondent contending that petitioners have failed to show the decrease in fair market value of the property and to establish its basis, while petitioners assert that they have met their burden of proof. Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction of nonbusiness property by reason of fire, storm, shipwreck, or other casualty to the extent that each such loss exceeds *433 $100 and is not compensated for by insurance or otherwise. The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Ownes, 305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391 (1978); sec. 1.165-7(b)(1), Income Tax Regs. The burden of proving these amounts rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. After the flood, petitioners obtained appraisals of the fair market value of the residence before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons *434 would be unfavorable to petitioners, [3] but neither can we give their appraisals any weight. The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationships to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards,370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, *435 even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); cf. United States v. 3,698.63 Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner, T.C. Memo 1977-142. The matter is not susceptible of precise determination on the record before us, but, doing the best we can with the materials before us, see Heyn v. Commissioner, 46 T.C. 302, 310 (1966), we have found that petitioners sustained a loss of $10,000 to their realty. The only evidence of the properties' pre-casualty and post-casualty values was offered through the testimony of petitioner Joseph E. Kozlik. He testified that he believed the residence *436 had a fair market value of $23,000 to $24,000 immediately before the flood. He claims that his estimate is based on comparable sales, but has not referred to any particular sales or otherwise persuaded us that the sales he may have had in mind were truly comparable. Taking into account his self-interest and the weaknesses of his knowledge, experience, and method of valuation, we have found as a fact that the fair market value of the residence was $22,000 immediately before the casualty. Joseph also testified that he believes that the residence had no value after the flood. His belief is admittedly not based on comparable sales and he gives no other basis for it. It appears to be merely a subjective feeling. To the extent that his estimate of post-casualty value, or lack thereof, reflects a temporary fluctuation due to petitioners' own -- or prospective purchasers' -- fear or discouragement with respect to low-lying property which has recently been flooded, the loss is not shown to be sustained in the year in question. Squirt Co. v. Commissioner, 51 T.C. 543 (1969), affd. per curiam 423 F.2d 710 (9th Cir. 1970); Peterson v. Commissioner, 30 T.C. 660 (1958). *437 With little to go on but a thumb-nail description of the damage and the fact that petitioners expended $10,450 for repairs to the residence, some of which cared for more than the damage caused by the flood, we have found as a fact that it had a post-casualty value of $12,000; i.e., a decrease in value equal to $10,000. * * *
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the other of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.