SIDNEY J. AND ANN B. MANNING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Manning v. Commissioner
Docket No. 1915-76.
United States Tax Court
T.C. Memo 1980-159; 1980 Tax Ct. Memo LEXIS 429; 40 T.C.M. (CCH) 298; T.C.M. (RIA) 80159; May 5, 1980, Filed Robert M. Tyle, for the petitioners. William J. Neild, for the respondent. DAWSON
MEMORANDUM *430 FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $795.96 and $964.72, respectively, in petitioners' 1969 and 1970 federal income taxes. We must decide whether petitioners are entitled to a net operating loss deduction under section 172 for either year and, if so, the amount thereof. Resolution of the issue depends upon the amount of a casualty loss deduction under section 165(a) to which petitioners are entitled for 1972. *431 FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their original and amended joint federal income tax returns for 1969 and 1970 and their joint federal income tax return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided at Corning, New York. In 1966, petitioners purchased a home in Corning, New York, for $17,500. They paid closing costs of approximately $300 upon the purchase and, prior to June 23, 1972, made improvements to the property which cost them something less than $1,000. On June 23, 1972, a flood struck the area. Water rose to a height of 17 inches on the first floor of petitioners' home, covering the yard, basement, and fllor of the first story with mud and debris. The back steps were washed away and lattice work around the back porches was destroyed. Everything in the cellar, including the furance and water heater, was ruined. The garage doors were ripped loose and its concrete floor broken. The hardwood flooring on the first floor buckled and first floor insulation and walls had to be replaced and replastered to *432 a height of about 18 inches. The parties agree that the loss to petitioners' personal property was $7,515.69, as claimed. Petitioners received a disaster loan from the Small Business Administration (hereinafter referred to as the SBA). On the application for the loan, they requested $3,500 for repairs to the home and $4,000 to replace personal property. The SBA forgave repayment of $5,000 of the loan. Petitioners did not receive anything further for their loss by way of insurance or otherwise. On their joint 1972 federal income tax return, petitioners claimed a casualty loss deduction under section 165(a) in the amount of $28,065.69. They applied $9,519.04 against their income for 1972 and carried back the balance to 1969 and 1970. Petitioners now concede that the loss should be reduced by $5,000; i.e., the amount of the SBA indebtedness which was forgiven. In his notice of deficiency, respondent allowed $8,626.72 of the claimed deduction and disallowed the remainder for lack of substantiation, resulting in no carryback loss for 1969 or carryover loss for 1970. Respondent determined the damage to petitioners' real estate to be $6,211.03. The decrease in value of the real *433 estate caused by the flood did not exceed the amount determined by respondent. OPINION The issue here is purely factual. The parties agree as to the amount of the deduction to be allowed for personalty lost in the flood. Petitioners now concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only dispute, then, is the amount of the loss to realty, respondent contending that petitioners have failed to show the decrease in fair market value of the house, while petitioners assert that they have met their burden of proof. Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction of nonbusiness property by reason of fire, storm, shipwreck, or other casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens, 305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391 (1978); sec. *434 1.165-7(b)(1), Income Tax Regs. The burden of proving these amounts rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. After the flood, petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [3] but neither can we given their appraisals any weight. *435 The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States,156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); cf. United States v. 3,698.63 Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969). While the owners of property are compentent to testify as to its value, the weight *436 to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner, T.C. Memo. 1977-142. The matter is not susceptible of precise determination on the scanty record here, but, doing the best we can with the materials before us, see Heyn v. Commissioner, 46 T.C. 302, 310 (1966), we have found that petitioners did not sustain a loss to their realty in excess of the amount allowed by respondent; viz., $6,211.03. The only evidence of the properties' pre-casualty and post-casualty values was offered through the testimony of petitioner Sidney J. Manning. He testified that he believes the residence had a fair market value of $21,000 to $22,000 immediately before the flood and was valueless immediately after the flood, but he did not state on what method or methods his estimates are based. In his testimony concerning the present value of the house, he indicates that the supposed sales prices of comparable houses were actually asking prices. This sheds doubt on his knowledge of valuation *437 techniques is general. Further, his testimony that the property was rendered valueless as the result of flooding to a height of 17 inches on the first floor seems so inherently incredible as to be wholly unworthy of belief. Taking into account his self-interest and the weaknesses of his knowledge, experience, and method of valuation, we are unable to find that the decrease in fair market value was more than the amount determined by respondent. Sidney's testimony as to the expenditures petitioners made to cure the damage caused by the flood is confusing. He claims that they spent $12,000 to $13,000 for materials, but, in volunteering the sources of those funds, he refers only to $7,500 borrowed from the SBA, a $1,000 interest free loan from his employer, and "a little money" of his own. We believe that the $12,000 to $13,000 figures may include the cost of replacement of some personal property and we are unwilling to find that such amount was actually expended for repairs to the realty. Petitioners retained no documentation of their costs and the description of the repairs petitioners made does not permit us to find them to have been in an amount greater than the loss allowed *438 by respondent. In as much as the amount of the loss allowable is less than the amount taken by petitioners as a deduction for 1972 ($9,519.04), petitioners have failed to carry their burden of proving that any amount is available as a net operating loss carryback deduction for 1969 or carryover for 1970 under section 172. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure; see Burlew v. Commissioner, T.C. Memo. 1979-368. * * *
In accordance with the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344, affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.