LEON F. AND PHYLLIS M. HODGE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondents
Hodge v. Commissioner
Docket Nos. 1802-76, 3720-76.
United States Tax Court
T.C. Memo 1980-155; 1980 Tax Ct. Memo LEXIS 425; 40 T.C.M. (CCH) 286; T.C.M. (RIA) 80155; May 5, 1980, Filed Robert M. Tyle, for the petitioners. William J. Neild, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below.
OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: These cases were consolidated for trial, briefing, and opinion under Rule 141(a), Tax Court Rules of Practice and Procedure. Respondent *427 determined deficiencies of $68.02, $366, and $561.97, respectively, in petitioners' 1969, 1972, and 1973 federal income taxes. Concessions having been made, the sole issue remaining for decision is whether petitioners are entitled to a net operating loss carryover to 1969 and 1973 under section 172 and, if so, the amount thereof. Resolution of the issue depends upon the amount, if any, by which a casualty loss deduction to which petitioners are entitled under section 165(a) for 1971 exceeds that allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their original and amended joint federal income tax returns for 1969 and 1971 and their joint federal income tax returns for 1972 and 1973 with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided at Corning, New York. Petitioners purchased a two-story house in Corning, New York, in 1969 for $14,500. They paid an attorney's fee of $125 upon the closing of the purchase and made capital improvements to the property prior to June 23, 1972, which cost them approximately $7,945. In 1971 and *428 the first part of 1972, the second floor of the house was held as a rental flat. Petitioners used the first floor of the property as their residence. Their residence portion consisted of a living room, dining room, kitchen, one bedroom, a sewing room, and one bathroom. On or about June 23, 1972, petitioners suffered a casualty loss by flood to the property and its contents when water rose to a height of approximately 54 inches on the first floor. One of the two garages was damaged beyond repair. A portion of the fence around the property and the front steps were washed away. The furnace was ruined. The hardwood floors and lower kitchen cabinets on the first floor were destroyed. All interior walls in the cellar and first floor were damaged.Cracks appeared in the walls on the second floor. Supporting posts had to be installed in the basement. It took a year to repair the property sufficiently for petitioners to move back in, petitioner Leon F. Hodge doing much of the work himself. Petitioners spent approximately $13,269.24 for materials and contract labor, which did not restore the property to as good condition as before the flood. The parties agree that the loss to petitioners' *429 personal property was $12,941.99. Petitioners obtained a loan from the Small Business Administration (hereinafter referred to as the SBA), repayment of $5,000 of which was later forgiven. Petitioners now concede that the amount of their loss should be reduced by $5,000 on account of this loan forgiveness. They did not receive anything further for their loss by way of insurance or otherwise. Petitioners filed an amended joint federal income tax return for 1971 [3] on which they claimed a casualty loss deduction under section 165(a) in the amount of $31,072.99; $18,231 attributable to the loss to realty. They applied $11,723.33 against their adjusted gross income for 1971 and carried back the remainder to 1968. The excess thereof over their income for 1968 was carried over to 1969, 1970, 1972, and 1973. Petitioners also claimed a loss due to the flood to the rental unti and its furnishings in the amount of $9,442.13 on their 1972 return; $7,234.72 attributable to the realty. In his notices of deficiency, respondent disallowed the loss claimed on petitioners' 1972 return and allowed $27,566.67 as a deduction with respect to the entire loss due to the flood in determining petitioners' *430 1971 tax and net operating loss carryback to 1968. The decrease in fair market value of the real property in issue caused by the flood was not more than $17,517.27, allowed by respondent. OPINION The issue here is purely factual. The parties agree as to the amount of the deduction to be allowed for personalty lost in the flood. Petitioners now concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only dispute, then, is the amount of the loss to realty, respondent contending that petitioners have failed to show that the decrease in fair market value of the property exceeds the amount respondent allowed, while petitioners assert that they have met their burden of proof. We agree with respondent.
Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction of property by reason of fire, storm, shipwreck, or other casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. The measure of the loss is the different between the fair market value of the property immediately before the casualty and its fair market *431 value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens, 305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391 (1978); sec. 1.165-7(b)(1), Income Tax Regs. The burden of proof as to values rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971).
To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. After the flood, petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method of methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [4] but neither can we give their appraisals any weight. *432 The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); cf. United States v. 3,698.63Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its vlaue, the *433 weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v.United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v.Commissioner, T.C. Memo. 1977-142. The only evidence of the property's pre-casualty and postcasualty values was offered through the testimony of petitioner Phyllis M. Hodge. She testified that she believed the residence had a fair market value of approximately $23,000 immediately before the flood. She claims that her estimate is based upon what petitioners paid for the house and improvements and upon comparable sales. She also testified that the property was valueless after the flood. She was extremely vague on both points, however, and appears actually to have relied entirely upon the real estate agents' unsupported appraisals referred to above. Taking into account her self-interest and the weaknesses of her knowledge, experience, and methods of valuation, we are unable to find that petitioners have established the fair market value of the property either immediately before or immediately after the casualty. In proper circumstances, *434 the amount of expenditures actually made to repair the damaged property is acceptable as evidence of the loss of value. See sec. 1.165-7(a)(2)(ii), Income Tax Regs.; Lamphere v. Commissioner, supra; Pickering v. Commissioner, T.C. Memo. 1978-427, affd. by unpublished order     F.2d     (2d Cir. Sep. 6, 1979), cert. denied     U.S.     (Jan. 7, 1980). Here, however, those expenditures are considerably less than the amount respondent has allowed for the loss. On the whole, we believe that respondent's allowance of a loss in the amount of $17,517.27 to the realty is generous. In any event, petitioners have not adduced evidence on the basis of which we can say that they are entitled to a deduction in any greater amount than that set forth in the notices of deficiencies. Petitioners having failed to carry their burden of proof, see Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure, we sustain respondent's determinations. See Burlew v.Commissioner, T.C. Memo. 1979-368. * * *
In accordance with the foregoing, Decisions will be entered for *435 the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to these cases.
3. See sec. 165(h).↩
4. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344, affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.