Dominick Palmisano, the defendant, owns the double dwelling located at 203 Jefferson Davis Parkway in this city. He occupies one-half of the property, and rents the other half to Mrs. Maud Stewart Loflin, the plaintiff.
Plaintiff brings this suit against Palmisano for $2,566.08, the alleged damages sustained by her as the result of a fire which occurred in the premises on September 23, 1942. Plaintiff claims that certain of her personal effects were destroyed or damaged, and further alleges that she lost profits from the business which she operated in the premises, and that she also lost certain rents.
The petition alleges that the defendant was in the process of repainting the property and was using a gasoline blowtorch to remove the old paint before applying the new paint; that the defendant had been engaged in this work for some weeks, and on the date alleged, while he was using the blowtorch to remove paint from the plaintiff's side of the premises, a fire occurred. It is alleged that the fire was caused through defendant's negligence.
The defendant filed an exception of no cause of action to plaintiff's petition, which was overruled by the lower court. An answer was then filed in which defendant denied negligence, and after a trial on the issues thus presented there was judgment in favor of plaintiff for $654.27. Defendant has appealed from the judgment and plaintiff has answered praying for an increase in the amount allowed her.
The defendant has reurged his exception and his counsel strenuously argues that the petition discloses no cause of action for *Page 29 
the reason that no specific act of negligence is charged against the defendant, and we are urged to maintain the exception and dismiss the suit. However, Article 6 of the petition reads as follows:
"That defendant herein was not schooled in the use of said blow torch and through his gross negligence and lack of experience did set fire to the premises damaging or destroying equipment of the beauty shop and furniture and household goods owned by plaintiff herein and situated in said premises."
[1] In the above article of the petition, defendant is charged with being "not schooled" in the use of a blowtorch and with setting the premises afire through his negligence and lack of experience. Therefore, we believe that the lower court was correct in overruling the exception, as the petition does set forth a cause of action and states fully the nature of the negligence imputed to defendant.
There is no dispute that the fire occurred on the date alleged and that the building of defendant was damaged to the extent of $3,700. There is likewise no dispute that some of plaintiff's personal belongings were destroyed or damaged by the fire. It is conceded by all parties that on the date of the fire Palmisano was using the blowtorch to burn old paint off the house and that the fire originated in the weatherboards about seven feet above the spot where he was working.
Defendant testified that he is an experienced painter and is skilled in the use of a gasoline blowtorch. He insisted that he used the blowtorch in the accepted and customary manner, that is to say, he held it in such a position that the flame moved downward so as not to permit fire to enter the laps of the weatherboards. The trial court appointed Mr. Herbert A. Benson, a registered architect in this city with much experience, to testify regarding the proper method of using a blowtorch. He testified that a blowtorch should be used in the manner explained by the defendant. Mr. Benson stated that one operating a blowtorch should be an expert, because if an inexperienced person used a torch there was much likelihood that damage would result. The witness further stated that a blowtorch generates a terrific amount of fire and that if it penetrated the laps of the weather-boards a fire would occur, as dust and cobwebs accumulate between the studs of the building and between the laps of the weatherboards, and resin is ordinarily very prevalent on the inside of the weather-boards. There is also testimony to the effect that between the walls and the inside of the weatherboards there exists a strong draft, and that should fire enter between the laps of the boards the draft would accentuate it. Mr. Benson stated that while fires resulting from blowtorch operations are infrequent, they do sometimes happen.
Defendant admitted that on a date prior to that on which the fire involved here occurred, while operating the blowtorch, he burned certain draperies of Mrs. Loflin, and that he settled with her for the damage.
[2, 3] Neither party attempted to explain the origin of the fire of September 23, 1942, and defendant's counsel argues that the burden of proof was upon the plaintiff to show negligence on defendant's part. He contends that Mrs. Loflin knew the defendant was using the blowtorch on the premises and that the facts relating to the origin of the fire were as readily accessible to her as they were to defendant; that as she failed to prove any act of negligence, defendant should not be held liable. We cannot agree with that contention. It is not denied, but rather is conceded, that a blowtorch is a dangerous instrumentality, which if improperly operated might endanger persons or property, and defendant, under the familiar rule, was bound to use care commensurate with the danger and risk which he should have reasonably apprehended. The cause of the fire was peculiarly within his knowledge, and in order to exculpate himself it was his duty to explain the cause and to show that he was free from fault. He made no attempt to do so and we are bound to hold him guilty of negligence. As has been mentioned, on a previous occasion the defendant damaged some of plaintiff's property. There is no evidence to indicate that he made any attempt, after the first fire, to guard against the probability of its recurrence.
In the case of Jones v. Shell Petroleum Corporation. et al.,185 La. 1067, *Page 30 171 So. 447, 449, a building belonging to the plaintiff was damaged by fire. At the time, the defendants were operating a filling station on the premises as tenants of plaintiff, and gasoline was being pumped by defendants' employees from a tank truck into an underground reservoir. Plaintiff alleged that while the tank truck was being so operated a fire occurred, the cause of which was unknown to him, but that the facts were within the knowledge of defendants. Defendants made no effort to explain the origin of the fire and plaintiff was allowed a recovery, the Supreme Court saying:
"While negligence is never presumed as a matter of law from the happening of an accident, the happening of the accident with its attendant circumstances may justify the inference of negligence. Thus, when the thing which produced the injury is under the control of the defendant or his servants and the injury would not have occurred unless negligence had been present in some form and the facts causing the injury are peculiarly within the knowledge of defendant and not equally accessible to plaintiff, the burden is on defendant to explain the cause of the accident, if he desires to escape from the inference of negligence."
The case of Prescott et al. v. Central Contracting Co. et al., 162 La. 885, 111 So. 269, 270, involved the destruction of a dwelling house by fire. The defendants operated a hoisting engine nearby without a proper spark arrestor, and the court held that they were liable in the absence of evidence showing that the fire occurred other than by sparks emanating from the engine. The court said:
"Under this state of facts and by reason of the time of the fire, the location of plaintiffs' building with reference to the distance therefrom and the character of the building surrounding it, the absence of gas or electrical connection or of fire in plaintiffs' building at that time, and its proximity to the smokestack of defendants' engine there arises a reasonable presumption of negligence on the part of defendants, and, inasmuch as defendants have offered no proof which rebuts this presumption, they cannot escape liability. Those who employ agencies, which might endanger persons or property, must use care commensurate with the danger and risk reasonably to be apprehended."
This court, in the case of Royal Insurance Co. v. Collard Motors, Inc., La. App., 179 So. 108, 112, considered liability for a fire which occurred in defendant's automobile repairing establishment. The fire originated from gasoline which had been spilled upon the floor. In holding defendant liable, we used the following language:
"Defendant argues that no causal connection has been shown between any of the acts of negligence and the fire itself. In view of the acts of negligence and the ensuing fire, we feel that the burden was on defendant to show clearly that the latter did not result from any one of the former. We are not satisfied that this burden has been discharged."
The plaintiff and her colored maid testified that after the fire was extinguished plaintiff went through the premises and made a list of the destroyed and damaged articles, and that alongside of each item was noted the valuation placed thereon by plaintiff. The original list, which is in plaintiff's handwriting, was offered in evidence. As to the articles which were only damaged, and which plaintiff had repaired, there is written alongside of each the amount which plaintiff asserts was expended in repairing them. Mrs. Loflin testified that she had accumulated the items over a period of years; that she could not say when or where she bought them; and that the appraisement placed on each item was about fifty per cent of the amount which she paid for it. She further testified that the appraisements were made from memory, as she kept no written records of her expenditures either for the articles when she bought them or of the amounts expended in restoring those that were damaged.
Plaintiff also testified as to the loss of certain profits which she would have earned in the operation of her beauty parlor, had the fire not occurred, and likewise as to the loss of rents which she would have otherwise collected from tenants who had been occupying rooms in her premises.
Defendant's counsel contends that Mrs. Loflin has not proved her damages with *Page 31 
certainty, as was encumbent upon her, and that the valuations placed on the items shown on the list are too uncertain to form the basis of a judgment for damages. On the other hand, plaintiff's counsel argue that the appraisements are entirely reasonable, and that the court below erred in allowing plaintiff a judgment for only $654.27, contending that we should increase the award to the amount claimed.
The judge of the court below gave written reasons setting forth the method used in arriving at the amount of the judgment, and we quote as follows therefrom:
"* * * Judgment was finally rendered in the sum of $654.27 with interest and costs. Since an appeal has been taken, I feel that I should advise the appellate court of the manner in which I arrived at the amount of the judgment hereinabove set forth. I itemize same as follows:
1) Loss of profits from operation of beauty parlor: 6 weeks at $10.00 per week .................. $ 60.00
2) Loss of rent from rooms: 6 weeks at $10.00 per week ......... 60.00
3) Household furnishings, furni- ture and beauty parlor equip- ment, some partially damaged, others total loss ................ 534.27.
"This item of $534.27 represents 33 1/3 per cent. or one-third of the total value of items ($1602.82) fully itemized and set forth in the brief filed by plaintiff, appearing in the record and made part hereof by reference. The items totaling $1149.61 represent property totally destroyed, and items totaling $453.21 represent property partially destroyed.
"Considering the nature of plaintiff's claim, the type and class of property involved, and after giving due consideration to all the evidence, I feel that the amount allowed is fair and reasonable and that the plaintiff should be paid at least such amount for the carelessness and negligence of the defendant."
[4-6] It is a matter of common knowledge that a householder accumulates his effects over a period of years, and that they are purchased from time to time in various establishments. In the event of a casualty such as fire, one usually is only able to state the cost price of each article from memory. Under the circumstances of this case, it would be unreasonable to expect Mrs. Loflin to prove her damages by any other means. She undoubtedly suffered an extensive loss by reason of the fire, and while the method used by the trial court in computing the amount of the judgment may not be the best that could have been pursued, it seems to us a fair way of arriving at the loss sustained by plaintiff, and we fail to see any error in the judgment.
[7] After the commencement of the trial in the lower court, plaintiff attempted to file a supplemental petition on behalf of her minor son, to whom she is natural tutrix, seeking to recover for certain of his belongings allegedly destroyed in the fire, but the claim was disallowed. The trial judge was correct in that ruling — the supplemental petition sought to change the issues, and also came too late.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.