Warren J. LaCOMBE, et al., Plaintiffs-Appellants,

v.

A–T–O, INC., Interstate Engineering, Defendant-Appellee.

No. 81–3591 Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 28, 1982.

Guste, Barnett & Shushan, Sidney L. Shushan, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, REAVLEY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

The issue in this case is whether the trial court erred in refusing to allow testimony by the Plaintiff-Appellant as to the value of his property allegedly destroyed by fire. We hold that it did.

## I. Statement of Facts.

Plaintiff-Appellant Walter J. LaCombe's home and much of its contents were destroyed by fire on January 4, 1978. LaCombe, along with Blue Ridge Insurance Company, sued A–T–O, Inc., Interstate Engineering Division, (Interstate) and Masterguard Corporation (Masterguard)[1] under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., 28 U.S.C. §§ 2201–2202, Louisiana tort and contract law, La. Civ.Code arts. 2475, 2476 and 2540–47, and the Louisiana Unfair Trade Practice Law, La.Rev.Stat. § 51:1409(A). LaCombe had purchased fire detection and alarm systems from Interstate and from Masterguard which allegedly failed to function properly to detect and to warn of the fire.

At the trial, counsel for plaintiffs attempted to introduce into evidence, through LaCombe, a list of items in his home at the time of the fire, prepared by LaCombe and his wife, together with their estimated valuations of the items. In response to the objection of Interstate to the admission of this evidence, the trial court indicated a willingness to admit the list to show the items lost in the fire, but the trial court also indicated an unwillingness to admit the val-

Donald Juneau, New Orleans, La., for plaintiffs-appellants.

1. The claims against Defendant Masterguard were dismissed with prejudice upon a joint motion pursuant to Fed.R.Civ.P. 41.

uations of the items without further documentation and foundation. At that point, the trial court proceeded to allow a voir dire examination of LaCombe, outside of the presence of the jury, to determine if La-Combe was qualified to give valuation testimony regarding movables and home improvements. LaCombe testified that the valuations of the movables consisted of the amount of money that he paid for each item less the depreciation of the item. The amount of depreciation he deducted was taken from guidelines given to him by an adjusting company—"for instance, like on an appliance we had a depreciation of maybe ten percent per year, and on furniture was maybe five percent a year, or on clothes and so forth, it might be quite a bit more depreciation." He testified that the figure of the value of the improvements was arrived at as follows:

> The insurance companies that we represent [2] give us a cost guide chart based upon the value, the current value of a home at the time we insure it. This cost guide chart is based upon location, construction of the home, age of the home, quality of the materials put into it, the square footage; if it has central heat and central air, carpet, fireplace. And those factors—after you combine all of those factors and you multiply the square footage, then you come up with an accurate current value of a home.

At the conclusion of the voir dire examination of LaCombe, the trial court ruled that LaCombe could not testify regarding the establishment of the value of the items by subtracting a certain percentage depreciation for a certain number of years from the purchase price of the item. The trial court thought that such testimony was "too close to speculations" and that "speculative testimony is not admissible for the purpose of establishing damages." The trial court further stated that with respect to the improvements "here again he is just applying a formula that was given to him and not

really something that he worked out for himself. He doesn't have any way to justify, he is not subject to cross-examination for the validity of that, how it came about.... I don't think that I can conclude from the fact that an insurance company uses a formula that it is necessarily sufficient to establish a value in a suit of this kind." In addition to ruling that La-Combe could not testify to the valuations arrived at through the use of the depreciation formulae, the trial court ruled that LaCombe could not testify to the date and price of purchase because that would be prejudicial in that the jury might use this undepreciated figure to establish on its own a market value. The trial court clarified that its ruling also applied to LaCombe's testimony as to the replacement value of the home.

Following the evidentiary ruling of the trial court, plaintiffs rested their case, pursuant to an agreement between the parties, reserving the right to introduce further evidence on all issues of liability raised by the pleadings in the case in the event the case was remanded for trial at a later date. Interstate then moved for a directed verdict, consenting to the reservation of rights to introduce further evidence on the issues of liability, and the trial court granted the motion.

## II. The Exclusion of LaCombe's Testimony.

Plaintiffs contend that, as owner, LaCombe was qualified to give opinion testimony on the value of his home and the furnishings within it which were destroyed by fire, even though he is not an expert in the area of valuation. They rely on the general principle, acknowledged in this circuit,[3] that the owner of property is qualified by his ownership alone to testify as to its value. *United States v. 329.73 Acres of Land*, 666 F.2d 281, 284 (5th Cir. 1982) (land); *Dietz v. Consolidated Oil & Gas,*

---

2. LaCombe was stated to be in the insurance business.

3. "Even in a diversity case, the Federal Rules of Evidence govern the admissibility of evidence." *Garwood v. Intern. Paper Co.*, 666 F.2d 217, 223 (5th Cir. 1982).

Inc., 643 F.2d 1088, 1094 (5th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 513, 70 L.Ed.2d 385 (1981) (growing crops); *Meredith v. Hardy*, 554 F.2d 764, 765 (5th Cir. 1977) (trucks, camper and personal property); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698 (5th Cir. 1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976) ("good will" value of a business); *Berkshire Mutual Insurance Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967) (personal property).

■ "The admission or exclusion of expert testimony [4] is a matter within the sound discretion of the trial judge. Only if we determine that his decision is 'manifestly' erroneous may we find that he has abused his discretion and that reversal is required. *Salem v. United States Lines Co.*, 1962, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313, 317; *Scott v. Fancher*, 5 Cir. 1966, 369 F.2d 842, 844." *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 535–36 (5th Cir. 1974). *Accord Page v. Barko Hydraulics*, 673 F.2d 134 (5th Cir. 1982); *Scheib v. 'Villiams-McWilliams Co., Inc.*, 628 F.2d 509, 511 (5th Cir. 1980).

■ Observing that LaCombe would be testifying "in something that is not akin to what he is doing for a living" and that "you cannot testify without a background," the trial court conducted a voir dire "to qualify Mr. LaCombe to give testimony, valuation testimony regarding movables and the replacement value of the improvements." LaCombe, however, was automatically qualified to give such testimony by virtue of his being the owner of the property. Whether or not his background in the insurance industry would have qualified him as an expert was therefore irrelevant. In *Meredith, supra*, we stated that "[a]n owner is always

competent to give his opinion," 554 F.2d at 765 (emphasis added), and in *329.73 Acres, supra*, we stated that "the opinion testimony of a landowner as to the value of his land is admissible *without further qualification*," 666 F.2d at 284 (emphasis added). "Such testimony is admitted because of the presumption of special knowledge that arises out of ownership of the land." *Id.*

■ The real issue in this case is not testimonial qualification but admissibility. *See District of Columbia Redevelopment Land Agency v. Thirteen Parcels of Land*, 534 F.2d 337, 341, 347 (D.C.Cir.1976). The trial court in this case refused to admit LaCombe's testimony as to the value of his property because the testimony would have been based at least in part on depreciation schedules as to the accuracy of which he was not qualified to testify. The basis of LaCombe's value testimony goes to its weight, however, not to its admissibility. Again we quote this circuit's opinion in *329.73 Acres*:

> [A]ppellant attacks the probative value of this testimony *on the grounds that it was not based on any accepted method of valuation*, but this overlooks the fact that the opinion testimony of a landowner as to the value of his land is admissible without further qualification.

666 F.2d at 284 (emphasis added.) This testimony is then "subject to attack through cross-examination or independent evidence refuting the owner's estimate . . . , with the jury as fact-finder shouldering the responsibility of judging the credibility of the witness, resolving the conflicting evidence, and assessing the weight of opinion testimony." *Kestenbaum, supra*, at 699 (citations omitted). *Accord Dietz, supra*, at 1011. It would totally emasculate the rule that an owner is always qualified to testify

---

4. Although both sides in this appeal have argued in terms of the general principles applicable to Fed.R.Evid. 701 (Opinion Testimony by Lay Witnesses), the testimony of an owner as to the value of his property is admitted under the Federal Rules of Evidence under Fed.R. Evid. 702 (Testimony by Experts). *South Central Livestock Dealers, Inc. v. Security State Bank*, 614 F.2d 1056, 1061 (5th Cir. 1980); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698 (5th Cir. 1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976). *See* Fed.R.Evid. 702 advisory committee note ("[W]ithin the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land values.").

as to the value of his property to turn around and require a threshold basis for that testimony before it may be admitted. As stated in *Arkansas State Highway Commission v. Russell*, 240 Ark. 21, 398 S.W.2d 201, 202 (1966), *quoted in District of Columbia Redevelopment Land Agency, supra*, 534 F.2d at 343 n.15 (emphasis added by D.C.Cir.):

> In nearly every instance, a landowner who has known his land for years, or an expert witness who has acquainted himself with a piece of property, takes into account facts that he knows only by hearsay or that for some other reason would not be admissible as independent evidence upon the examination in chief. *If the witness' candid admission that he has considered such matters destroys his testimony, only a dishonest or an ill-informed witness can give an admissible opinion about the value of property.*

As owner of the property as to the value of which he was going to testify, LaCombe was qualified to give such testimony. In addition, we hold that testimony by LaCombe as to the value of the property was admissible despite the fact that he may have been relying to some extent on hearsay.[5] It is clear that the district court applied different standards and that had it applied the appropriate standards LaCombe should have been allowed to testify. We therefore find the decision of the district court manifestly erroneous. Although Interstate argues that it is unfair to allow LaCombe to testify on the basis of the

5. With respect to expert testimony based on hearsay, the en banc opinion of this Court in *United States v. Williams*, 447 F.2d 1285 (5th Cir. 1971), *cert. denied*, 405 U.S. 954, 92 S.Ct. 1168, 31 L.Ed.2d 231 (1972), summarized the law as follows:

> Expert witness testimony is a widely-recognized exception to the rule against hearsay testimony. It has long been the rule of evidence in the federal courts that an expert witness can express an opinion as to value even though his opinion is based in part or solely upon hearsay sources. *United States v. Alker*, 3 Cir., 1958, 260 F.2d 135; *Birdsell v. United States*, 5 Cir., 1965, 346 F.2d 775, 779–780, cert. den. 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366; *Brown v. United States*, 1966, 126 U.S.App.D.C. 134, 375 F.2d 310, 318; *H & H Supply Co. v. United States*, 10 Cir., 1952, 194 F.2d 553. The rationale for this exception to the rule against hearsay is that the expert, because of his professional knowledge and ability, is competent to judge for himself the reliability of the records and statements on which he bases his expert opinion. Moreover, the opinion of expert witnesses must invariably rest, at least in part, upon sources that can never be proven in court. An expert's opinion is derived not only from records and data but from education and from a lifetime of experience. Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise.

*Id.* at 1290 (footnote omitted). The District of Columbia Circuit has implied that admissibility of owner value testimony should be even more favored than expert testimony in general. In *District of Columbia Redevelopment Land Agency v. Thirteen Parcels of Land*, 534 F.2d 337 (D.C.Cir.1976), the trial court had refused to permit the landowner to testify as to his opinion of the reasonable value of the property insofar as it was based in part on his purchase of another piece of property which the court found to be not comparable. *Id.* at 338. The majority of the panel on appeal concluded that the landowner should have been permitted to testify as to the value of his property even though his opinion was based in part on his experience with the non-comparable property. *Id.* The majority took the following position:

> In the case of an expert witness who bases his testimony on improper and incompetent grounds, the rule is clear that the testimony should not be admitted. *See, e.g., Commonwealth, Dep't of Highways v. Darch*, 374 S.W.2d 490 (Ky.1964); *San Diego Land & Town Co. v. Neale*, 88 Cal. 50, 25 P. 977 (1891). This is so because the probative value of such expert testimony, stripped of its claim of expertise, is very low, while the likelihood that it will confuse the trier of fact is very high. In these matters, the trial judge has considerable discretion. *See, e.g., District of Columbia Redevelopment Land Agency v. 61 Parcels of Land*, 98 U.S.App.D.C. 367, 235 F.2d 864 (1956). Other courts have gone farther, and have applied the expert basis rule to owners' testimony. *See, e.g., Commonwealth, Dep't of Highways v. Fister, Ky.*, 373 S.W.2d 720, *rehearing denied*, 376 S.W.2d 543 (Ky.1963). In these instances, however, we believe the discretion of the trial judge must be tempered by another factor—the policy in favor of permitting owners to testify as to the value of condemned property.

*Id.* at 340.

depreciation schedules because it is denied the opportunity to attack the validity of the schedules through cross-examination, Interstate could have deposed LaCombe to find out what the basis of his testimony would be and thereby had the opportunity to obtain its own experts to challenge those schedules or LaCombe's valuations.

■ Interstate further contends that even if the trial court's ruling was incorrect, the error was not prejudicial. We disagree. Interstate argues that the exclusion was not prejudicial because the jury might have rejected the evidence. That is true of any evidence, however, and such a rule would therefore mean that the improper exclusion of evidence could never amount to reversible error. Here, the judge directed a verdict after improperly excluding plaintiffs' only evidence on an essential element of its case. The exclusion was clearly prejudicial. Interstate also argues that the owner cannot prevail unless his testimony has sufficient probative force to sustain a verdict. In *Kestenbaum, supra,* we stated:

> Under certain circumstances, . . . for instance where the owner bases his estimation solely on speculative factors, the owner's testimony may be of such minimal probative force to warrant a judge's refusal even to submit the issue to the jury.

514 F.2d at 699. We are not prepared to say on the basis of the limited voir dire that the trial court would, or could, have concluded that the evidence in this case, once recognized as admissible, was of insufficient probative force to sustain a verdict. Finally, Interstate argues that the error is not prejudicial because the evidence was insufficient under Louisiana law. Even looking to Louisiana law, see note 3 supra, we reject this argument. While Interstate argues in the first part of its brief that Plaintiffs should be denied recovery because the method of valuing the property, subtracting depreciation from purchase price, is not one of the three tests used by Louisiana courts, it conveniently directs us to the case of *Stewart v. Palmisano,* 31 So.2d 27 (La.Ct. App.1947), in which just such a formula was

used. In the opinion in that case, the Louisiana appeals court recognized the problem with too strict a requirement of proof in a case such as this:

> It is a matter of common knowledge that a householder accumulates his effects over a period of years, and that they are purchased from time to time in various establishments. In the event of a casualty such as fire, one usually is only able to state the cost price of each article from memory. Under the circumstances of this case, it would be unreasonable to expect Mrs. Loflin to prove her damages by any other means. She undoubtedly suffered an extensive loss by reason of the fire, and while the method used by the trial court in computing the amount of the judgment may not be the best that could have been pursued, it seems to us a fair way of arriving at the loss sustained by plaintiff, and we fail to see any error in the judgment.

*Id.* at 31.

We therefore reverse and remand for a new trial.

REVERSED AND REMANDED.