UNITED STATES of America, Plaintiff/Appellee,

v.

10,031.98 ACRES OF LAND, MORE OR LESS, SITUATE IN LAS ANIMAS COUNTY, COLORADO, and the Federal Land Bank of Wichita, Defendants,

and

Sharp Ranch, Inc., et al and Unknown Owners, Defendant/Appellant.

No. 85–2657.

United States Court of Appeals, Tenth Circuit.

June 30, 1988.

William B. Lazarus, Dept. of Justice, Washington D.C., (Arthur E. Gowran, Jacques B. Gelin, Dept. of Justice, Washington D.C., Robert N. Miller and Linda A. Surbaugh, Denver, Colo., with him on the brief), for plaintiff/appellee.

Jon L. Holm (Steven A. Christensen and Jeffrey C. Johnson with him on the brief), Holm and Christensen, Denver, Colo., for defendant/appellant.

Before ANDERSON, McWILLIAMS, and BALDOCK, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Sharp Ranch Inc., appeals from two decisions of the district court. First, it contests the district court's determination to grant a new trial after Sharp Ranch had received a jury verdict valuing ranch property condemned by the United States and severance damage to the remaining ranch property at two million dollars. Second, it contests the district court's refusal to grant a new trial after the jury in the second trial awarded Sharp Ranch $1,733,- 596.00 as compensation for the condemnation.

Following the first trial, the district court granted the government's motion for a new trial because it found that the jury's verdict was "not based on sufficient evidence and [was] against the clear weight of the evidence." R.Vol. I Tab 12 at 8. Sharp Ranch argues that this determination was an abuse of discretion. Sharp Ranch also argues that the court's refusal to grant its motion for a new trial following the second trial was an abuse of discretion because in the second trial the court misapplied the law of evidence in excluding from trial: (1) the testimony of the owner regarding the value of Sharp Ranch, (2) certain of the owner's business records, and, (3) rebuttal testimony. Sharp Ranch also contends that the district court abused its discretion in the second trial by failing to qualify Gordon Scranton as an expert witness, and by inappropriately responding to a question posed to the court by the jury after the jury had begun its deliberations. Sharp Ranch contends that these alleged errors affected its substantial rights and thus warrant a new trial.

Because we find no abuse of discretion in the district court's first order granting a new trial we affirm that order. However, as to its second determination, we find that the district court committed reversible error when it failed to permit the landowner to testify as to the value of his condemned property. Accordingly, Sharp Ranch is entitled to a new trial and we reverse the district court in part.

I.

The amount which a jury awards in a condemnation proceeding will be upheld if it is within the scope of evidence presented at trial. *See United States v. 158.24 Acres of Land,* 696 F.2d 559, 564 (8th Cir. 1982); *United States v. 9.20 Acres of Land,* 638 F.2d 1123, 1126 (8th Cir.1981). The trial court commits reversible error, however by making an award which is "clearly erroneous, based upon misapplication of law, unsupported by the evidence or contrary to the clear weight of the evidence." *United States v. 77,819.10 Acres of Land,* 647 F.2d 104, 109 (10th Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *United States v. 79.95 Acres of Land,* 459 F.2d 185, 187 (10th Cir.1972).

In the first trial, Sharp Ranch introduced three witnesses who testified as to the value of the condemned property. The first, Clifton Sharp, the president of Sharp Ranch, Inc., testified as owner of Sharp Ranch that its value before the taking was over four million dollars. He based this valuation on the offering prices he received on potential replacement ranches in the broad general area, coupled with his calculation of the carrying capacity[1] of Sharp Ranch, which he estimated at more than 800 animal units,[2] as compared with the carrying capacity of the potential replacement ranches. See R.Vol. II at 13–14, 20–21, 21–23 Using this same carrying capacity valuation method, he testified that the value of Sharp Ranch after the condemnation was one and a half million dollars. A second witness, Larry Cheney, an expert in animal nutrition, confirmed Sharp's estimate as to the carrying capacity of Sharp Ranch, but did not otherwise offer any testimony as to the value of the ranch either before or after the condemnation.

Sharp Ranch attempted to qualify its third witness, Gordon Scranton, as an expert land appraiser. Although the district court refused to certify Scranton, it did allow him to give lay testimony. The principal testimony concerning valuation that Scranton gave regarding value of the Sharp Ranch property was that a comparable ranch with a similar carrying capacity sold at $4,499 dollars per animal unit of carrying capacity. The attorney for the government objected to this testimony and the objection was sustained by the district court.

The only other valuation testimony was offered by the government's expert witness, Stephen Willman. Mr. Willman testified that the value of the Sharp Ranch before the taking was three million dollars and that its value after the taking was $1,655,000 making the fair market compensation to the Sharps $1,345,000.

After its deliberations the jury in this first trial found that before condemnation the Sharp Ranch was worth $3.6 million, and that after condemnation the remaining portions of the ranch were worth $1.6 million. Accordingly, the first jury awarded the Sharps two million dollars in compensation. Although, on the surface the jury's award appears to be within the range of the testimony, the court found this award unsupported by sufficient evidence, and granted a new trial.

The court based its decision on two grounds. First, it determined that Clifton Sharp's method of property valuation made his estimate of property value insufficient to support the award. Second, it noted that Gordon Scranton's testimony as to the value of property based on its carrying capacity was based on mathematical error and was thus likely to mislead the jury. We find neither of these determinations to be a clear abuse of discretion.

"[A]n owner, because of his ownership, is presumed to have special knowledge of the property and may testify as to its value." *United States v. Sowards*, 370 F.2d 87, 92 (10th Cir.1966). He may offer such testimony without further qualification. Furthermore, in testifying as to the value of his property the owner is entitled to the privileges of a testifying expert. *See La-Combe v. A–T–O, Inc.*, 679 F.2d 431, 434 n. 4 (5th Cir.1982); *see also United States v. Laughlin*, 804 F.2d 1336, 1341 (5th Cir. 1986) (owner's testimony is expert opinion under Fed.R.Evid. 702); *Robinson v. Watts Detective Agency*, 685 F.2d 729, 739 (1st Cir.1982) (owner allowed to give estimate of property value based in part on hearsay); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 699 (5th Cir.1975) (quoting Fed.R.Evid. 702), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349

1. "Carrying capacity" refers to the number of animal units which can annually graze on the ranch without damaging the ranch's annual natural forage.

2. R.Vol. II at 11. An animal unit is based on a thousand pounds of weight, thus a cow and a calf is considered one animal unit while a dry cow is one animal unit, a bull is 1.2 animal units, a weaned calf is .5 animal units and a yearling is .7 units. R.Vol. II at 109–110. (Testimony of Gordon Scranton).

(1976); Fed.R.Evid. 702 advisory committee note ("[W]ithin the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or *landowners testifying to land values*.") (emphasis added).

Nonetheless, a landowner's testimony as to the value of his property is not always sufficient testimony on which a verdict can be based. There must be a basis for the landowner's valuation, and when the landowner's own testimony shows that his valuation has no probative value, the district court may determine that the landowner's testimony alone is insufficient to support a jury verdict. *Sowards*, 370 F.2d at 92 ("[W]here the presumption of the owner's special knowledge is negated by his own testimony, his opinion has no probative value and is insufficient to sustain the award."); *see also Kestenbaum*, 514 F.2d at 698–99; *Klapmeier v. Telecheck International, Inc.*, 482 F.2d 247, 253 (8th Cir. 1973).

At the initial trial, Clifton Sharp indicated that he used the offering prices he was quoted by those attempting to sell comparable ranches in the general area as the base prices from which he then made adjustments based upon the relative carrying capacities of those ranches to Sharp Ranch. It has long been held in condemnation suits that the offering price of replacement properties cannot be used to show the fair market value of condemned land.

> "Evidence of the price paid for other comparable property must be confined to instances in which the transactions have been completed by an agreement between a seller and a buyer for the sale of the property for a stipulated price. It is well settled that a mere offer, unaccepted, to buy or sell is inadmissible to establish market value."

*United States v. Smith*, 355 F.2d 807, 811 (5th Cir.1966); *see also United States v. Dillman*, 146 F.2d 572, 575 (5th Cir.1944), *cert. denied*, 325 U.S. 870, 65 S.Ct. 1409, 89 L.Ed. 1989 (1945); *Atlantic Coast Line R. Co. v. United States*, 132 F.2d 959, 963 (5th Cir.1943); *United States v. Certain Parcel of Land*, 322 F.Supp. 841, 851 (W.D.Mo. 1971); Annotation, *Unaccepted Offer To Sell Or Buy Comparable Real Property As Evidence Of Value Of Property In Issue*, 25 A.L.R. 4th 615 (1983); *cf. Sharp v. United States*, 191 U.S. 341, 348–50, 24 S.Ct. 114, 115–16, 48 L.Ed. 211 (1903) (Offers to purchase real estate not akin to offers to purchase articles sold in the market with a known and ready price); *United States v. Regents of New Mexico School of Mines*, 185 F.2d 389, 391 (10th Cir.1950) (evidence of specific offers of purchase not admissible to determine fair market value); *Emerald Oil Co. v. Commissioner*, 72 F.2d 681, 683 (10th Cir.1934) (same); *Clarke v. Hot Springs Electric Light & Power Co.*, 55 F.2d 612, 616 (10th Cir.1932) (same); 7 Nichols on Eminent Domain § 8.05[2][i] (3d ed.1987) ("[I]f you can develop through cross-examination that the testimony of an opposing valuation witness is based on offers ... and that the witness cannot reasonably exclude and separate the influence or extent of this illegal evidence, the court should promptly exclude all the valuation testimony of the witness.")

In this case, Sharp used the offering price of replacement property as the basis for figuring the value of his own property. Thus, his opinion of the value of his own property cannot be separated from the basis on which he arrived at that opinion even though Sharp factored in the difference in carrying capacity between Sharp Ranch and the ranches on which he received the offers. *See Smith*, 355 F.2d at 812–13 (estimate of value calculated through the use of option prices is inadmissible). Thus, it is not improper for the judge to conclude that the jury could not properly base its award on the testimony of Clifton Sharp because his own testimony indicated that he had calculated the value of his property in an unacceptable manner.

It is true that the government did not object to the admission of Sharp's testimony. However, in condemnation cases the landowner has the burden of establishing property values, and the "trial court has an independent obligation, to a reasonable extent to see that the landowner's claim is

submitted only on competent evidence." *United States v. 158.24 Acres of Land,* 696 F.2d 559, 564 (8th Cir.1982). Thus, on a motion for a new trial, the court could consider the basis of Sharp's valuation since the adoption of a valuation amount which was based on a "misapplication of law" would amount to reversible error.

Other than Sharp's testimony, the only evidence of value submitted at trial by Sharp Ranch was Scranton's testimony that land sufficient to support one animal unit, based on a comparable sale, was worth $4,499. However, as the trial court points out, this calculation appears from the trial testimony presented by Mr. Scranton himself to be erroneous. Scranton employed one comparable sale which appears in the trial transcript—the Larrew Ranch— to determine the value of Sharp Ranch. Scranton testified that the Larrew Ranch and the Sharp Ranch were comparable properties. He further testified that the Larrew Ranch could carry 126 animal units and sold for $464,000. He thus determined the selling price per animal unit to be $4,499. *See* R.Vol. II. at 125–26.

But as the district court points out, simple division shows that the sales price for the Larrew Ranch on an animal unit basis was approximately $3,682.54 per animal unit. On appeal, Sharp Ranch attempts to rehabilitate Scranton's testimony by arguing that the figure reflects an upward adjustment in the value of the animal unit since the Larrew sale, because it took place three years before the condemnation. Although such an explanation is feasible, it is not supported in any way by Scranton's testimony. Accordingly, because Scranton's testimony appears on its face to be the result of mathematical miscalculation, we cannot find that the district court abused its discretion in determining that Scranton's calculations alone were insufficient evidence on which to base the jury's award.

It is also worth noting that not only did Scranton offer no opinion as to the value of Sharp Ranch either before or after the condemnation, the record shows that the government objected to Mr. Scranton's testimony regarding the price per animal unit of the comparable Larrew sale, and that the objection was sustained.[3] This valuation testimony by Scranton was never rehabilitated. As a result the jury could not have appropriately relied on the testimony of Scranton to determine a value for Sharp Ranch.

Because the jury could correctly rely on neither the testimony of Sharp nor the testimony of Scranton concerning the value of Sharp Ranch, the only testimony on which they could have relied was that of the government's expert—Willman. Because Willman testified that the value of Sharp Ranch was three million dollars before the condemnation, however, the jury verdict finding the value before the condemnation to be 3.6 million was not within the scope of any admissible evidence. As a result, we find no error in the district court's determination to grant a new trial.

3. "Q. All right. What would the price then be per animal unit?
"A. $4,499.
"MR. CAROLAN: Objection, your Honor. I still don't think he's established that the marketplace recognizes this through his sales. We are now reducing the sales down to two. And unless your Honor will give me broad latitude in cross-examination in going into all the sales that were provided to me—
"THE COURT: Well, as I understand it this is supposedly a comparable sale, and it comes out at approximately $90 an acre; is that right?
"MR. HOLM: Your Honor, we are comparing this with regard to animal units that the ranch will carry, and he's testified that it takes 126 animal units.

. . . .
"MR. HOLM: Your Honor, we are saying that the price per acre is not the comparable factor.
"THE COURT: Well that's what the land sold for, and that's the test. It's what the market will bring. Do you want me to give you a definition of fair market value?
"MR. HOLM: No, your Honor, I think I know it. I am not certain—
"THE COURT: Well, you are not using it, counsel, not in this instance. The objection is sustained on that portion of the question that said how many head of cattle or how many animal units it would carry."
R.Vol. II at 126–28.

## II.

■ In the second trial Clifton Sharp, as the owner of Sharp Ranch,[4] again attempted to testify to the ranch's value. This time around, however, Sharp, although conducting a similar calculation to determine the value of his property, based his valuation on the actual selling prices, as opposed to the offering prices, of comparable ranch properties. Nonetheless, the district court did not allow Sharp to testify as to his opinion of the value of his property. Before Sharp could offer his opinion as to the value of Sharp Ranch based on such calculations, the government repeatedly objected as to the foundation of such testimony. Those objections were sustained by the district court.

Despite the fact that Sharp established he was the landowner, the court insisted that before being allowed to offer an opinion as to land values, he must detail the individual sales which he compared with Sharp Ranch to make a comparative determination of its value, and that he introduce the "best evidence" available to corroborate each ranch's statistics on which he made his evaluations.[5] When Sharp did not offer what the trial court considered to be the "best evidence" of the data on which Sharp based his estimate of the carrying capacities of other ranches, it refused to allow Sharp to testify as to the value of his own ranch. This determination was in error. "[T]he opinion testimony of a landowner as to the value of his land is admissible *without further qualification." La-Combe*, 679 F.2d at 434. And, "[i]t would totally emasculate the rule that an owner is

---

**4.** The owner of Sharp Ranch was in reality Sharp Ranch, Inc., a family owned corporation of which Clifton Sharp was the president. The corporation was formed in 1973. Clifton Sharp acquired the first section of the ranch in 1963 and lived on it until the condemnation. The cases show that an owner has the right to testify as to the value of the property at issue even when the owner is a corporation and the valuation testimony comes from a designated corporate officer. *See, e.g., Robinson,* 685 F.2d at 739 (president and majority stockholder of company treated as owner for purposes of offering valuation testimony); *South Central Livestock Dealers, Inc. v. Security State Bank,* 614 F.2d 1056, 1061 (5th Cir.1980) (financial officer treated as owner for purposes of offering valuation testimony); *see also J & H Auto Trim Co. v. Bellefonte Ins. Co.,* 677 F.2d 1365, 1369 (11th Cir. 1982) (corporate owner treated as owner of business capable of offering valuation testimony); *Baltimore Am. Ins. Co. v. Pecos Mercantile Co.,* 122 F.2d 143, 146–47 (10th Cir.1941) (testimony of corporate president treated as testimony of owner). Further, in this case the trial court recognized that Clifton Sharp was to give the valuation testimony on behalf of Sharp Ranch, Inc. It was at least partially on this basis that the court refused to allow Dan Sharp to give his opinion as to the ranch's value. R.Vol. V. at 128–29.

**5.** When Sharp testified that he arrived at his opinion of his ranch's value by comparing his ranch with the sales prices of other comparable ranches the district court required that Sharp as a result had to comply with the typical procedures that an MAI appraiser would have to comply with before giving an opinion of value:

"THE COURT: The objection is sustained. He hasn't given the date of the sale, he hasn't given the name of the seller, the name of the buyer. You know, Mr. Holm, there are fundamental basic questions that have to be responded to before the witness can give an opinion. You are trying to get this man to testify as an MAI appraiser, and he is just able to testify as an owner.

"MR. HOLM: I agree, Your Honor. I am not trying to get him to testify as an expert witness or an appraiser, but only as an owner, and I believe the—

"THE COURT: Yes, but you are going through the same routine that you go through for an MAI, and you know it, and if you go through that routine you have to do it as required by law.

"MR. HOLM: All right, Your Honor. I am simply—

"THE COURT: Don't argue. Proceed."

R.Vol. V at 23. When Sharp accordingly began to detail the information concerning the comparable properties required by the district court, beginning with the neighboring Larrew Ranch sale which had occurred three years earlier, Sharp testified that he was familiar with the carrying capacity of the Larrew Ranch because the two ranches often conducted exchange work with each other. The district court refused to allow Sharp to offer testimony of the carrying capacity of the Larrew Ranch on that basis finding that such testimony did not constitute the best evidence of the carrying capacity of the Larrew Ranch. *Id.* at 24–25. Although Sharp went on to testify concerning other ranches which he had considered in forming his opinion as to the Sharp Ranch, the district court never let him offer an opinion as to his Ranch's value based on those comparisons.

always qualified to testify as to the value of his property to turn around and require a threshold basis for that testimony before it may be admitted." *Id.* at 434–35.

In *LaCombe* the trial court refused "to admit Lacombe's testimony as to the value of his property because the testimony would have been based at least in part on depreciation schedules as to the accuracy of which he was not qualified to testify." *Id.* at 434. The Fifth Circuit in reversing this determination noted, however, that:

"The basis of Lacombe's value testimony goes to its weight ... not to its admissibility....

'[A]ppellant attacks the probative value of this testimony *on the grounds that it was not based on any accepted method of valuation,* but this overlooks the fact that the opinion testimony of a landowner as to the value of his land is admissible without further qualification.'

"This testimony is then 'subject to attack through cross-examination or independent evidence refuting the owner's estimate ..., with the jury as fact-finder shouldering the responsibility of judging the credibility of the witness, resolving the conflicting evidence, and assessing the weight of opinion testimony. ...'

'In nearly every instance, a landowner who has known his land for years, or an expert witness who has acquainted himself with a piece of property, takes into account facts that he knows only by hearsay, or that for some other reason would not be admissible as independent evidence upon the examination in chief. *If the witness' candid admission that he has considered such matters destroys his testimony, only a dishonest or an ill-informed witness can give an admissible opinion about the value of property.'* "

*Id.* at 435 (citations omitted) (emphasis in original); *see also Baltimore Am. Ins. Co. v. Pecos Mercantile Co.,* 122 F.2d 143, 147 (10th Cir.1941) ("The testimony in question [an owner's valuation testimony] was admissible. Its weight was for the jury.");

*Robinson v. Watts Detective Agency,* 685 F.2d 729, 739 (1st Cir.1982) ("Whether or not [an owner's opinion as to the value of his property] is accurate goes to the weight of the testimony, not its admissibility."), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983); *J & H Auto Trim Co. v. Bellefonte Ins. Co.,* 677 F.2d 1365, 1369 (11th Cir.1982) ("[A]n owner of property is competent to testify regarding its value. The weight of such testimony is, of course, affected by the owner's knowledge of circumstances which affect value, and as an interested witness, it is for the jury to evaluate the credibility of his testimony.'"); *District of Columbia Redevelopment Land Agency v. Thirteen Parcels of Land,* 534 F.2d 337, 343 (D.C.Cir.1976) ("In these circumstances, we believe that such factors as the differences in size, frontage and location of the two properties go to the weight of the owner's testimony regarding suitability and not to its admissibility.").

Sharp's opinion as to the value of his own property was based on an evaluation of comparable sales of similar ranch property in the broad general area. In making such a comparison, Sharp also clearly evaluated the differences in carrying capacities between his own ranch and the ranches to which he compared his own. Although he could be cross-examined concerning his knowledge of the carrying capacities of the other ranches, and other details of the comparable sales, Sharp could not be prevented from offering his opinion as to the value of his property even if he did not first establish in painstaking detail the accuracy of the process by which he arrived at that opinion.

The problem with the district court's refusal to allow Sharp to offer his opinion as to value unless he complied with the standards required of an expert appraiser, is that an expert appraiser does not have the familiarity with the subject property that an owner is presumed to have. Such a ruling also ignores the reality that a landowner too must compare the special characteristics of his property with similar characteristics of other properties to arrive at a reasoned estimate of its value. Despite the informal comparison that is involved in

such a process, the standard federal rule is and has been that a landowner may testify as to the market value of his own property. It is only when his own testimony negates the presumption that he has special knowledge of his property that a court is authorized to find such testimony alone insufficient to support a jury verdict in favor of the landowner. *Sowards*, 370 F.2d at 92. Even in such cases the court cannot prevent the owner from testifying as to value, although it can prevent the case from going to the jury.

Here, Sharp testified that his ranch property had unique characteristics which where were well-suited to a cow/calf operation. He also testified that, as compared to other ranches, its carrying capacity, when combined with this suitability, increased the ranch's value.

The district court, in the first trial properly permitted Sharp to testify as to the value of the ranch. It also properly determined, after it had allowed Sharp to testify, that Sharp's testimony, since it was based on unacceptable methods of valuation, was insufficient to support a jury verdict. In the second trial, however, the trial court refused to allow Sharp to testify as to the value of his property, even though Sharp made it clear in his testimony that his evaluation was not based on inherently impermissible methods.

It might be argued that the error did not affect Sharp's substantial rights if the court would have nonetheless determined that Sharp's testimony was insufficient evidence on which a jury verdict might have rested. But we cannot reach that conclusion here. Unlike his valuation in the first trial, Sharp clearly indicated that he based his calculation of the value of his property on the sales prices of comparative properties and not their offering price. The sales price of "comparable property within a reasonable time before taking" is viewed as the best evidence of fair market value in this Circuit. *See Sowards*, 370 F.2d at 89; *United States v. 77,819.10 Acres of Land*, 647 F.2d 104, 109 (10th Cir.1981), *cert. de-*

*nied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed. 2d 441 (1982). Hence, "[w]e are not prepared to say … that the trial court would, or could, have concluded that the evidence in this case, once recognized as admissible, was of insufficient probative force to sustain a jury verdict." *LaCombe*, 679 F.2d at 436. Nor can we conclude that the jury would have rejected Sharp's testimony as not credible. *Id.* The only other evidence offered by Sharp Ranch which was admitted to establish the fair market value of the ranch was the lay opinion testimony of Gordon Scranton. We cannot say, after reviewing the whole trial, that the testimony of Clifton Sharp would not have influenced the jury's award in this case. Because a property owner has the right to testify as to the value of his property, and because Mr. Sharp's rights in this regard were denied, we hold that the district court abused its discretion in refusing to grant Sharp Ranch a new trial.[6]

Therefore, we AFFIRM the district court's decision to grant the first new trial; we REVERSE its decision to deny the second; and we REMAND for a new trial.

---

6. Because we find that the district court committed reversible error in so ruling, we do not consider any other alleged errors raised by Sharp Ranch.